## Richmond

### HARVEY JAMES FISHER v. COMMONWEALTH OF VIRGINIA

March 4, 1977.

Record No. 760515.

Present, All the Justices.

*Frank F. Arness; R. Wayne Nunnally (Nunnally and Arness, on brief), for plaintiff in error.*

*Guy W. Horsley, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.*

COMPTON, J., delivered the opinion of the court.

This is a criminal appeal which deals with the constitutional right of confrontation. U. S. Const. amends. VI, XIV, § 1; Va. Const. art. I, § 8. We consider whether testimony given by a witness during a preliminary hearing on a murder charge may properly be received as substantive evidence for the prosecution in the subsequent trial for both the murder and a robbery arising out of the same occurrence when the witness is deceased at the time of trial. We think the evidence was admissible and affirm.

On September 9, 1973, at about 11:00 p.m., Johnny Doho Lam, while accompanied by his wife, was fatally shot outside his restaurant in Hampton during the course of an armed robbery which occurred immediately after he had closed the business for the night. At the trial the Commonwealth's evidence showed that as Lam and his wife prepared to enter their automobile parked at the front door of the restaurant, the assailant approached the couple and demanded money. When Lam said he had none, Mrs. Lam threw her billfold to the assailant, who took it, shot Lam in the back of the head, and ran from the scene. Defendant Harvey James Fisher, sometimes known as James Harvey Fisher, was apprehended about 18 months later in Georgia and charged in a warrant with Lam's murder.

A preliminary hearing on the murder charge was held on July 3, 1975 in the General District Court of the City of Hampton at which Ronald McCarthy, an eyewitness to the shooting and an alleged accomplice of Fisher, testified that Fisher committed the murder. Following the hearing, the case was certified to the circuit court, the judge of the court not of record finding there was probable cause to charge defendant with the murder. *See* Code § 19.2-186 (then § 19.1-106); Rule 3A:5(b)(2)(ii).

Within two weeks after the preliminary hearing, the witness McCarthy was found stabbed to death in a motel room in Jacksonville Beach, Florida. On August 4, 1975, the Hampton grand jury indicted defendant for Lam's murder; defendant was also charged in two additional indictments with armed robbery of both Lams. During the December 1975 trial on the three indictments in the court below, over defendant's objection, a transcript of McCarthy's preliminary hearing testimony was read to the jury as a part of the Commonwealth's case. Defendant presented an alibi defense, claiming he was in Fayetteville, North Carolina, at the time of the crimes.

The jury found defendant guilty of the murder in the first degree, guilty of armed robbery of Mrs. Lam, and not guilty of robbery of Mr. Lam. On December 19, 1975, the trial court entered judgment on the jury's verdicts and sentenced Fisher to 20 years' confinement in the penitentiary for the murder and to ten years' imprisonment for the robbery. We awarded defendant a limited writ of error to consider the correctness of the trial court's action in permitting use of McCarthy's hearsay testimony in the trial on the merits.

We examine first the propriety of admitting the statement for use in the murder prosecution. In so doing, we study further the preliminary hearing.

Testifying during the hearing in addition to McCarthy were an investigating police officer and Mrs. Lam, the only other eyewitness to the shooting who also identified Fisher as the assailant. Defendant was present and was represented by the two attorneys who were subsequently trial counsel and who are now appellate counsel. During the hearing the prosecutor propounded 16 questions to McCarthy, the direct examination covering approximately five pages of the transcript. Defense counsel's cross-examination of the witness contains 135 questions and answers, comprising about 28 pages of transcript, which also includes repeated overruled objections made by the prosecutor. There was no redirect examination.

During the direct examination, McCarthy testified that he knew defendant, whom he identified in the courtroom; that he was with defendant when the crimes were committed and saw him "pull a robbery and shoot a man"; that defendant was standing behind the man holding him "by the shirt with the gun on his head"; that "it all happened in a matter of a split second"; and that he "saw the woman throw a pocketbook across the car . . . and [he] heard the gun go off. . . ."

During cross-examination, McCarthy stated he was unsure of the exact date of the crimes; that he and defendant lived in Fayetteville; that they came to Hampton on the day of the crimes "to steal some money"; that they had initially planned to rob a "bookie" in Hampton but as they waited outside the bookie's home they saw him with "a lot of other people" and decided to rob the owner of the White Oaks Restaurant, located near Lam's restaurant. McCarthy testified that when he and

defendant reached the White Oaks Restaurant they separated, McCarthy going to "check" the back door which he found locked. The witness further testified that as he returned to the front of that restaurant, he saw Fisher about 35 yards away "commit this particular act."

Contending the only "role" he played was to run from the scene with Fisher after the shooting, McCarthy described in detail Fisher's physical appearance and dress at the time. He further testified defendant told him, as they were leaving the scene in an automobile which they had parked in the vicinity, that "he didn't know how he shot the man or why" and that "the gun just went off. . . . [I]t was an accident." He also stated that after the shooting he saw defendant handling money, which was contained in a lady's wallet in Fisher's possession.

Further on cross-examination, McCarthy admitted that he was wanted by the police on a number of "bad check" offenses for which he had not been arrested; that he had been previously convicted of a felony; that he had been arrested and charged with Lam's murder; and that the Hampton police had promised to drop the "check charges" against him if he "testified to what [he] knew about" the Lam crimes and if he made "restitution on all the checks." McCarthy further admitted that approximately a month after the murder and before he had been arrested for it, he made "demand upon the outstanding reward money that [had] been posted [in a substantial amount] for this crime". Cross-examination raised the inference that McCarthy had been led to believe that if he testified against Fisher, the murder charge against him would not be prosecuted.

At the trial, the fact of McCarthy's death was stipulated; the court reporter, who took down and transcribed the testimony at the preliminary hearing, authenticated the accuracy of the transcript, from which McCarthy's sworn testimony was read to the jury.

■ Respecting use of the testimony to support the murder charge, defendant contends his constitutional right to confront the witnesses against him was violated because the jury was deprived of the "opportunity to observe the appearance and demeanor of the witness", and because "the limitation of cross-examination at a preliminary hearing held only to establish probable cause is not the type of confrontation that

satisfies either" the federal or state constitutional guarantees. We disagree.

Since at least near the turn of the century, this Court, and the Supreme Court of the United States, have recognized the admissibility in a criminal trial of prior-recorded testimony of an unavailable witness under certain circumstances. In *Parks* v. *Commonwealth*, 109 Va. 807, 63 S.E. 462 (1909), relying on *Mattox* v. *United States*, 156 U.S. 237 (1895), we sustained defendant's contention the trial court erred in refusing to receive in evidence the testimony given by defendant's deceased wife at a former *trial* of the case, at which the witness was cross-examined by the Commonwealth's Attorney. Disapproving dicta in three earlier cases, the *Parks* court decided that such evidence was admissible, "assuming always that there has been a due cross-examination". 109 Va. at 809, 63 S.E. at 463.

In *Mattox*, defendant had been awarded a new trial on appeal of a murder conviction. At the second trial, the prosecution introduced the recorded testimony of two witnesses, since deceased, given at the first trial. The Supreme Court rejected defendant's argument that his right of confrontation had been abridged. The Court noted "the authority in favor of the admissibility of such testimony, where the defendant was present either at the examination of the deceased witness before a *committing magistrate*, or upon a former trial of the same case, is overwhelming", 156 U.S. at 241 (emphasis added), and held "[t]he substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." *Id*. at 244.

In contrast and more recently in *Pointer* v. *Texas*, 380 U.S. 400 (1965), later use of preliminary hearing testimony of an unavailable witness was held improper when defendant was without counsel at the prior hearing and did not attempt to cross-examine the witness. But the court noted: "The case before us would be quite a different one had [the witness'] statement been taken at a full-fledged hearing at which [defendant] had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." *Id*. at 407.

Subsequently, in *Barber* v. *Page*, 390 U.S. 719 (1968), *California* v. *Green*, 399 U.S. 149 (1970), *Dutton* v. *Evans*, 400

U.S. 74 (1970), and *Mancusi* v. *Stubbs*, 408 U.S. 204 (1972), the Supreme Court addressed the confrontation issue in the context of varying factual situations. For example, in *Mancusi*, the prosecution offered at a retrial the transcript of testimony of a then unavailable witness given at the first trial about nine years earlier. The Court found no constitutional error in permitting the prior-recorded testimony to be read to the jury at the second trial. The Court held that "[s]ince there was an adequate opportunity to cross-examine" the witness at the first trial, and since counsel for defendant "availed himself of that opportunity," the transcript of the testimony carried "sufficient indicia of reliability" and provided "the trier of fact a satisfactory basis for evaluating the truth" of the earlier testimony. 408 U.S. at 216. Applying the foregoing test, we reach the same conclusion in the present case, there being no issue as to McCarthy's unavailability.

During the preliminary hearing, one of defendant's two attorneys present at the hearing conducted a vigorous, detailed and searching cross-examination of McCarthy focusing on the two main issues which later developed at the trial, as far as McCarthy's testimony was concerned — identification of defendant as the assailant and McCarthy's credibility. The testimony was given under oath in a judicial proceeding which was distinctly adversary. Hence, the transcript of McCarthy's testimony at the preliminary hearing carried sufficient indicia of reliability and provided the jury a satisfactory basis for evaluating the truth of his prior statements. Accordingly, we find no constitutional error in permitting this use of the prior testimony to support the murder charge. *See Virgin Islands* v. *Acquino*, 378 F.2d 540, 547-49 (3d Cir. 1967); *State* v. *Ford*, 336 So.2d 817, 819 (La. 1976); *Commonwealth* v. *Mustone*, 353 Mass. 490, 492-94, 233 N.E.2d 1, 3-4 (1968); *State* v. *Jacob*, 222 N.W.2d 586, 589-90 (N.D. 1974); 5 Wigmore, *Evidence* § 1375 (Chadbourn rev. 1974); 3 C. Torcia, *Wharton's Criminal Evidence* § 650 (13th ed. 1973); McCormick, *Evidence* §§ 255-58 (2d ed. 1972).

We now turn to the use of McCarthy's prior testimony in the prosecution of the robbery charge. Defendant argues that his right of confrontation was violated "to a greater degree" by such use because at the time of the preliminary hearing defendant

had not been charged with robbery "and the focus of cross-examination [was] necessarily on the murder alone." We also reject this contention.

The robbery and murder indictments grew out of one transaction, the events of which took place "in a matter of a split second." The evidence of the murder necessarily included the facts surrounding the robbery. And defendant's cross-examination unavoidably dealt not only with the two issues common to both charges, identification of defendant and McCarthy's credibility, but also with the details of the robbery. Under these circumstances, such evidence was properly received by the trial court in support of the robbery indictment. *See State v. Jackson*, 30 N.C. App. 187, 226 S.E.2d 543 (1976); *Fox v. State*, 102 Ark. 393, 144 S.W. 516 (1912).

Finally, we reject defendant's contention the trial court erred in permitting use of the transcript because, he says, it was prepared at the request of defendant's attorney and "at cost to [defendant] thereby constituting attorney's work product" which enjoyed a "privileged status." In the first place, this complaint was not made in the trial court and we will not notice such an objection for the first time on appeal. Rule 5:21 (then Rule 5:7). Secondly, there is no merit to the contention, even if the point had been properly preserved. The attorney's "work product" privilege does not preclude use at a subsequent trial of recorded testimony given in open court during a preliminary hearing at which the witness has been, or could be, compelled to testify. *Commonwealth v. Mustone*, 353 Mass. at 494, 233 N.E.2d at 4.

For these reasons, the judgments of conviction will be

*Affirmed.*