## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

James Robert Starkey

Case No. (Criminal) 7695

December 4, 1991

BY JUDGE JAMES H. CHAMBLIN

This case is before this judge on the defendant's motion to dismiss the indictment. For purposes of this motion, I have considered the following:

1. Transcripts of the hearings in the Loudoun County General District Court on September 16, 1991, and September 19, 1991, before Judge Archibald M. Aiken, Jr.

2. Transcript of the preliminary hearing on September 25, 1991, before Substitute Judge Rodney G. Leffler and the exhibits admitted into evidence.

3. The motion filed herein on November 8, 1991.

4. All the papers in the court file in this case, including the papers from General District Court.

5. The argument of counsel on November 22, 1991, including the papers tendered to the Court by defense counsel.

For the reasons hereinafter set forth, the motion to dismiss the indictment is denied. The defendant received a fair and proper preliminary hearing under Virginia law.

The defendant has moved for dismissal of the indictment because he alleges that his preliminary hearing violated his "statutory and constitutional rights, amounting to no more than a sham proceeding." He has asserted five grounds for his motion, as follows.

1. Despite an express order of the General District Court, the commonwealth withheld statements of the accused.

2. The Commonwealth withheld *Brady* material it was ordered to produce prior to the preliminary hearing.

3. The General District Court agreed with the Commonwealth and quashed a certain *subpoena duces tecum* requested by the accused before the preliminary hearing.

4. The judge at the preliminary hearing ignored the provisions of § 19.2–183(B) concerning the hearing of evidence for the accused.

5. The accused was denied the appearance, if not the fact, of an impartial tribunal because the judge who presided over the preliminary hearing served as a police officer with the officers who testified before him and other officers investigating the case.

Before discussing each ground of the motion, it must be noted that the purpose of a preliminary hearing is to determine if there is "sufficient cause" for charging an accused with the offense. Virginia Code § 19.2–186. The Supreme Court has referred to the standard of proof as one of "probable cause," *Foster v. Commonwealth*, 209 Va. 297 (1968), and "reasonable ground to believe." *Williams v. Commonwealth*, 208 Va. 724 (1968). The standard of probable cause at a preliminary hearing is the same standard applicable to a police officer in the field in determining whether or not an individual can be arrested and the same standard utilized by a magistrate to determine whether an arrest or search warrant should issue.

At a preliminary hearing, the judge must determine from the evidence presented by the Commonwealth and the defendant, if he presents evidence, whether such evidence would warrant a person with reasonable caution to believe that a crime was committed and that the defendant committed it.

While a police officer or a magistrate decides *ex parte* if there is probable cause, the judge in a preliminary hearing considers evidence presented in an adversary proceeding. Under § 19.2–183(B), the judge must "hear testimony presented for and against the accused," and an accused "may cross-examine witnesses, introduce witnesses in his own behalf, and testify in his own behalf." A pre-

liminary hearing is merely a screening process to determine if there is probable cause that a felony was committed and the accused as the one who committed it. These are the issues in a preliminary hearing. Guilt or innocence of the accused is not an issue. The evidence presented at a preliminary hearing both for and against an accused is material and relevant only if it bears on the two issues. Any evidence presented by the defense must tend to show either that the crime had not been committed or that the defendant had not committed the crime. *Foster*, 209 Va. at 300.

I. *Commonwealth withheld defendant's statements despite order of General District Court to produce them*

By order of the General District Court entered August 16, 1991, the Commonwealth was required to produce certain statements made by the defendant. At the preliminary hearing, Investigator Simpson testified that the defendant made statements to him on July 22, 1991, that implicated the defendant in not only the offenses which were the subject of the preliminary hearing but also an unrelated burglary. Simpson testified that the defendant first implicated himself in a burglary before he made a confession as to the subject offenses.

At a hearing in the General District Court on September 19, 1991, the Commonwealth's Attorney represented that he had no intention of offering at the preliminary hearing evidence of the defendant's confession to the unrelated burglary. Despite this representation, the Commonwealth did offer the confession as to the unrelated burglary through Investigator Simpson. When Simpson offered this testimony, Judge Leffler received it over the objection of the defendant only as the basis for his being at the defendant's residence.

The defendant argues that it was a "meaningless exercise" for the General District Court to order the production of the statements in advance, have the Commonwealth withhold them, and tell the Court there is no intention to use them, and then permit the Commonwealth to offer them at the preliminary hearing. He asserts that he was denied a full and fair opportunity to cross-examine the officers involved.

I agree with the defendant that the Commonwealth violated the order requiring production of the statements. I cannot agree that the statement was simply a statement about an unrelated offense. It led to statements by the defendant about the subject offenses. It started a chain of events that led to the seizure of the alleged murder weapon.

The order of August 16, 1991, does not limit the subject matter of statements of the accused.

For whatever reasons defense counsel deemed appropriate, he did not seek an order compelling disclosure of the statement, and he did not ask for a continuance as contemplated by Rule 7C:5(f). Judge Leffler was fully apprised of the defendant's situation, but he merely ruled on the admissibility of the statement for purposes of the preliminary hearing. Defense counsel was given considerable latitude by Judge Leffler in cross-examining Simpson as to the statements.

The preliminary hearing was not improper merely because the Commonwealth violated the discovery order and introduced statements it said it would not introduce. If anything, the defendant got the benefit of hearing other statements attributed to him that had no bearing on the probable cause issue. It gave him discovery he might not have gotten otherwise which could be used for a future suppression motion.

The defendant has no right at a preliminary hearing to present any and all evidence he wishes. He has no right to have his guilt or innocence of a felony determined at a preliminary hearing. He has no right to use a preliminary hearing as a discovery device.

The Commonwealth clearly presented enough evidence to show probable cause that the felonies had been committed. The Commonwealth's evidence to show probable cause that the defendant committed them came solely from Investigator Simpson's testimony of the defendant's confession. A police officer's sworn testimony of an accused's confession made to him is certainly sufficient probable cause that the accused committed the offenses. If defense counsel wanted to show that Investigator Simpson fabricated the defendant's statements, none of the proffers of evidence presented by defense counsel seriously attacked Simpson's credibility. Judge Leffler was correct in finding probable cause upon the evidence presented.

A defendant has no right to appeal the decision of the General District Court judge at the preliminary hearing to certify the case to this Court. He has no right to have this Court review the evidentiary decisions of the judge at his preliminary hearing. Therefore, I am of the opinion that the indictment can only be dismissed if the defendant was in fact denied a preliminary hearing or was for all practical purposes denied the meaningful screening process that a preliminary hearing should have provided. The defendant is not entitled to a per-

fect preliminary hearing. He is not entitled to have another preliminary hearing even if the judge is clearly wrong in certifying the case.

I am of the opinion that the actions concerning the accused's statements of which he complained did not deprive him of a proper preliminary hearing. I cannot find that his preliminary hearing was a sham.

At oral argument, defense counsel asserted that his ability to cross-examine was undermined by the lack of evidence presented by the Commonwealth. This argument lends more credence to a conclusion that the defendant's real objection to the preliminary hearing is that the Commonwealth did not present all of its evidence against the defendant at the preliminary hearing. The Commonwealth does not have to present all its evidence and need only present enough evidence to show the required probable cause. *Williams*, 208 Va. at 728. The Commonwealth does not need to go any further and provide a defendant with gratuitous discovery.

For the foregoing reasons, the defendant was not denied a proper preliminary hearing because of statements withheld or used despite prior indications otherwise or heard for the first time at the preliminary hearing.

## II. *Failure to Produce Brady Material*

All of the defendant's assertions about the failure to produce exculpatory material relating to the other latent prints found at the scene, the bloody footprints found at the scene, and a cash drawer from another unrelated crime are without merit because the Commonwealth accepted and Judge Leffler considered the defendant's proffers of evidence concerning the first two and the defendant did not pursue by proffer the third after Judge Leffler sustained the Commonwealth's objection. I cannot find that Judge Leffler abused his discretion in requiring the defendant to proffer what his evidence would be because his evidence would only be admissible as to the issue of probable cause. Defense counsel made his points with the accepted proffers of the testimony of Investigators Johnson and Merchant, Ms. Palmer and Ms. Myer. Judge Leffler did not err in refusing the proffered testimony of Investigator Horak and Captain Brown because neither would have any effect on probable cause.

Defense counsel may have wanted to pursue his points as to these three areas in more detail for no other purpose than discovery, but his points were considered by Judge Leffler, and he still correctly

found probable cause. Even if the defendant had been able to produce the evidence he wanted, it would not have negated probable cause.

It does not follow that the defendant is denied a proper preliminary hearing just because the Commonwealth withheld exculpatory evidence. If the failure to disclose the above information violated the prior order of the General District Court, then the defendant should have requested an order from that Court to produce the claimed exculpatory evidence and asked for a continuance until it has been produced. The defendant did neither. He decided to go ahead with the preliminary hearing and later ask this court to give him another preliminary hearing.

The defendant cannot at a preliminary hearing under the guise of § 19.2–183(B) embark on a "fishing expedition" hoping to find something helpful to him. The defendant has not shown that he was denied a proper preliminary hearing because of the failure of the Commonwealth to produce exculpatory evidence.

III. *Quashing of the Subpoena Duces Tecum*

The quashing of the defendant's requested *subpoena duces tecum* by the General District Court (a decision not appealable to or reviewable by this Court) did not deny the defendant his right of confrontation or violate § 19.2–183(B). At a preliminary hearing, a defendant has no right to require the Commonwealth to call to the stand all the witnesses it may call against him at trial. The Commonwealth need only call enough witnesses to show probable cause. The Commonwealth only called two witnesses. The defendant was allowed to cross-examine each within the rules of evidence. Section 19.2–183(B) does not give the defendant the right to put on whatever evidence he wishes. His evidence must be relevant and material to the determination of probable cause.

IV. *General District Court judge allegedly ignored the provisions of Virginia Code Section 19.2–183(B)*

The provisions of § 19.2–183(B) require the judge to hear evidence for the accused only as to the issue of probable cause. It does not require the judge to hear all the evidence the accused wishes to present concerning the alleged crime. Because of the narrow scope of a preliminary hearing, and its being a screening process, there was nothing wrong with the approach utilized by Judge Leffler. For these

reasons and others set forth above, Judge Leffler did not ignore the provisions of § 19.2–183(B).

## V. *Alleged possible lack of impartiality on the part of Judge Leffler*

The response to the *subpoena duces tecum* requested by the defendant directed to the Fairfax Police Department shows that Judge Leffler resigned from the force on May 18, 1979. It also shows that Investigator Johnson and Investigator Merchant were employed by the Fairfax Police at the same time as Judge Leffler (July, 1973, to May, 1979), but none of them served in the same district or department at the same time. Johnson and Merchant are now employed by the Sheriff's Department of Loudoun County, the investigative agency for this case. In response to a letter from defense counsel, Judge Leffler had made a part of the record in this case a statement that "none of [his] associations, past or present, professional or personal, affected any ruling [he] made during Mr. Starkey's preliminary hearing."

I find nothing in my review of the transcript of the preliminary hearing to show that Judge Leffler acted without impartiality. He acted fairly, professionally, and with due regard of the importance of the case to both sides.

All judges are sensitive to a possible appearance of partiality. We must, at least initially, rely on the judge to disclose any matter which may affect his impartiality. If, however, the judge does not, then it may be necessary to examine an appearance of partiality if known facts would raise a reasonable question of partiality.

Judge Leffler took an oath when he assumed the duties of a substitute judge. It is a very serious allegation that he has not complied with the Canons of Judicial Conduct. Such allegations should not be taken lightly and should not be pursued by another judge upon a mere suggestion of some partiality. Judges do not live in a sterile environment. They, as human beings, must have had, and still have, in some way contact with other human beings. The special confidence reposed in Judge Leffler by his appointment as a substitute judge indicates that he can act impartially having had contact with many other persons. It further means that he has the ability to recognize when his partiality is affected or might reasonably be questioned. The standard should be whether a reasonable person with knowledge of the facts and circumstances would question the impartiality of the judge.

The only known circumstance which might in any way call into question Judge Leffler's impartiality is that he, Investigator Johnson (a witness for the Commonwealth at the preliminary hearing) and Investigator Merchant (a witness whose testimony was proffered at the preliminary hearing) worked for the Fairfax Police between 1973 and 1979 with no indication that they worked together at any time in the same department or district. This is not enough to reasonably question the impartiality of Judge Leffler, especially, in light of his own statements made a part of the record in this case. Further, it is not enough for this Court to even allow the defendant to question these two officers or any of the other officers summoned by the defendant for November 22, 1991. Having worked on the same police force over twelve years ago is not a sufficient allegation to permit defense counsel to question in open Court other officers with only a mere hope of learning something further. The defendant will have to come forward with much more in the way of concrete facts for this judge to permit defense counsel to embark on any inquiry in open court of the officers involved in this case and their association with Judge Leffler.

The only difficulty which I have with this motion is the potential for the application of *Fisher v. Commonwealth*, 217 Va. 808 (1977), if Investigator Simpson were unavailable to testify at trial. I will not be the trial judge in this case, but it is my opinion that *Fisher* is a narrow exception to a defendant's right of confrontation at trial. In *Fisher*, defense counsel's cross-examination at the preliminary hearing was extensive, and there was no indication that anything had occurred which would have permitted a more effective cross-examination of the witness at trial. *Fisher* would not prohibit the defendant from presenting evidence at trial to contradict the statements testified to by the subsequently unavailable witness at the preliminary hearing or prohibit evidence of such witness' bias or prejudice or affecting his credibility.

In conclusion, I cannot find that the defendant was denied his constitutional rights or his rights under § 19.2–183(B) at his preliminary hearing. It was not a sham. The evidence proffered by the defendant and the evidence excluded would not have affected the finding of probable cause. The defendant has presented nothing to warrant further proceedings on the alleged impartiality of the presiding judge. The defendant's preliminary hearing functioned as it should, i.e., a

proper screening process. The Commonwealth presented enough evidence to support a finding of probable cause. The defendant cannot complain that the Commonwealth did not present all of its evidence or that he was prevented from putting on all the evidence that he wanted to present. The defendant had a proper and meaningful preliminary hearing. The certification was proper. This case should proceed to trial or other disposition in this Court.

For the foregoing reasons, the Motion is denied.

I have received and reviewed after I prepared this opinion letter the defendant's "Supplement to Motion to Dismiss." The information therein relates to representation by Judge Leffler of three Vienna police officers over seven years ago at a time that Investigator Simpson was one of 31 Vienna officers. There are no allegations linking Judge Leffler's actions as an attorney with Investigator Simpson. There are no allegations that he was directly or indirectly involved with the disputes in which Judge Leffler represented the three police officers. This is not enough to reasonably question Judge Leffler's impartiality even considering the other matters previously raised by the defendant.

August 31, 1992

BY JUDGE THOMAS D. HORNE

This case again came to be heard over the course of several days upon the Defendant's Motion to Suppress. In his Motion, he suggests violations of various statutory and constitutional rights by agents of the County requiring exclusion of statements, articles, and opinions. The Court will address each of the issues raised by the Defendant's Motion.

On the evening of July 22, 1991, Stephen Simpson, an investigator with the Loudoun County Sheriff's Department, met with the Defendant at his home located in Sterling, Loudoun County, Virginia. Upon his arrival at the Starkey household, Simpson photographed, fingerprinted, and questioned the Defendant concerning his involvement in a series of burglaries which Simpson was investigating in the Sterling area. These initial steps in Simpson's investigation were carried out in the Defendant's home. At no time during this part of Simpson's investigation was the Defendant in custody. After the Defendant's parents arrived home, Simpson began to leave the house. As with many other facts about which there is much conflicting testi-

mony, the Defendant and Simpson disagree as to who may have suggested a continuation of the prior conversation outside the home. The Court finds that the Defendant voluntarily accompanied Simpson to his patrol car. After arriving at the patrol car, the Defendant seated himself on the right front passenger's side of the vehicle. Simpson seated himself behind the wheel. Simpson then moved his vehicle into the Defendant's driveway.

After parking the vehicle, the Defendant and Simpson talked. The content of this discussion is likewise in controversy. The Court finds that the Defendant was not in custody or otherwise deprived of his freedom of action in any significant way upon his entry into the vehicle and that such freedom of action continued until after he had been informed in writing of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See also Lanier v. Commonwealth*, 10 Va. App. 541, 555 (1990).

At 8:15 p.m. that evening, Simpson handed to the Defendant a form styled "Interrogation: Advise of Rights, Your Rights." The form contained the standard advise of rights with a separate paragraph at the bottom prefaced by the words "Waiver of Rights" printed in bold face. This paragraph contains the following:

> I have read this statement of my rights, and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me.

The Defendant contends in his sworn testimony that he did not read the form before he signed it. The Commonwealth counters with the following uncontroverted evidence in support of its contention that not only was Mr. Starkey advised of his constitutional rights, but that he made a knowing and intelligent waiver of those rights prior to making the inculpatory statements the Commonwealth seeks to use against him.

1. The Defendant signed the form directly beneath the provision relating to a waiver of rights.

2. The Defendant's Honors English class teacher testified that he was "very good" in English. Further, she testified that in order to qualify for Honors English, a student has to be in the 85th to 90th percentile in reading. According to his teacher, Mr. Starkey was able

to read and comprehend the Advise of Rights and Waiver Form in issue.

3. In a taped interview approximately four and one-half hours later, the Defendant indicated that he had been advised of his rights, identified Simpson as the person so advising him of his rights, that the advise was given by having him read the form and sign it, that he understood his rights, and that he had no questions about his rights.

4. The tape of the interview indicates the responses of the Defendant to be both clear and succinct.

5. There was sufficient light to read the form at the time stated on the Advise of Rights, viz. 8:15 P.M.

Furthermore, Simpson testified that prior to handing the form to the Defendant, he stated it would be best that he advise the Defendant of his rights. Simpson asked the Defendant to read it. The Defendant said he understood it and signed his name. In addition, Simpson placed an "X" on the line at the bottom and indicated a place to sign if the Defendant had no questions and wished to talk to the officer.

Mr. Starkey testified that Simpson "told me that before he could talk to me anymore and before I could leave, that I would have to sign this form. He put the form on a note pad and handed it to me and said "Sign here at the 'X' where he made an 'X' on the line. And without reading the form, I signed it and gave it back to him." Mr. Starkey explained his not having read the form, "[b]ecause I felt threatened that if I did not be able [sic], if I did not sign that, that Investigator Simpson would continue to accuse me and just, I would not be able to leave."

The Court finds that at the time Simpson gave the form to the Defendant, Mr. Starkey was not in custody or otherwise deprived of his freedom of action in any significant way. *Miranda, supra,* at 444, *Lanier, supra,* at 554. Nevertheless, as these warnings are critical to a consideration of certain aspects of Defendant's motion, the Court must determine if the Commonwealth has met its burden of showing by a preponderance of the evidence that the Defendant was properly advised of his rights under *Miranda* and met its "heavy burden" of demonstrating that he made a knowing and intelligent waiver of those rights. *Colorado v. Connelly,* 497 U.S. 157 (1986). The Court finds that the Commonwealth has met its burden in this case. Furthermore, the Court finds that the statements given by the Defendant

relevant to this case, both in Officer Simpson's car at approximately 8:15 p.m. the evening of July 22, 1991, and later on the morning of July 23, 1991, at the jail, were freely and voluntarily made.

While the preferred practice would have been for Simpson to have verbally articulated the Defendant's rights and to have so explained his rights to him, no particular form of the warnings or waiver is a necessary predicate to proper application of *Miranda* to custodial interrogations. *United States v. Sledge*, 546 F.2d 1120 (1977). Conversely, an express written statement of waiver of the right to remain silent or of the right to counsel is "strong proof" of the validity of a waiver. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). While the Defendant contends that he asserted his right to counsel later that evening prior to his interrogation at the jail, this evidence is contradicted by the witnesses for the Commonwealth. The Court finds that the Commonwealth has met its burden of showing that no such request was made and that the rule of *Edwards v. Arizona*, 451 U.S. 477 (1981), and its progeny would not bar consideration of those statements.

Simpson's testimony concerning statements made in the car that evening may be considered by the factfinder in this case. According to his testimony at the suppression hearing, Simpson related that the Defendant made certain admissions to him in the car concerning his involvement in the homicide. The Court finds that based upon those statements, Simpson had probable cause to arrest the Defendant at that time. *Hardy v. Commonwealth*, 11 Va. App. 433 (1990). When Starkey left the vehicle to return to his house, there were sufficient exigent circumstances justifying pursuit by Simpson and a warrantless entry into the house. *Payton v. New York*, 445 U.S. 573 (1980); *Hull v. Commonwealth*, 12 Va. App. 559 (1991). As the Court has found the Commonwealth to have met its burden under *Miranda*, its prophylactic effect continued as to any testimony relating to statements made by the Defendant after leaving the car and prior to the seizure of the pistol under the Defendant's bed. *Cheng v. Commonwealth*, 240 Va. 26 (1990).

Simpson found Starkey in his bedroom on the second floor of his home. The Court finds that the seizure of a pistol in a box under the bed was justified as incidental to his arrest. *Chimel v. California*, 395 U.S. 752 (1969); *Hollis v. Commonwealth*, 216 Va. 874 (1976).

Subsequent to the seizure of the weapon and arrest of the Defendant, the Defendant was taken before a magistrate and later interro-

gated at the jail. The testimony as to the circumstances surrounding the taking of this confession is in serious conflict. The interrogators describe a setting in the jail law library devoid of threats and coercion. Mr. Starkey's description of this conversation with Simpson and Investigator Merchant is colored with references to threats, cursing, and physical violence. While the better police practice would have been to tape the entire interview, a failure to do so does not serve as a basis for excluding those statements from consideration by the factfinder.

Based upon a consideration of the evidence, the Court finds that the Commonwealth has met its burden of demonstrating by a preponderance of the evidence that the statements sought to be used at trial were voluntarily given. *Griggs v. Commonwealth*, 220 Va. 46 (1979). It will be for the factfinder to determine at trial the weight, if any, to be given the testimony of the officers and that of the Defendant.

The portion of the statement which is taped does not indicate coercion. Answers given by the Defendant on tape are both clear and cogent. Some responses consist of long narratives of the events by the Defendant. The Defendant denies on the tape that any threats or promises were made. The officers invited comment from the Defendant at the conclusion of the interview to which he responded. He then reflected upon his dissatisfaction with allegations of deliberation and premeditation because of who he is and what he had done. Such a response would not appear to be a reflective reaction to intimidation and forced extraction of inculpatory information.

Two later search warrants were issued for clothing of the Defendant. These are not the product of tainted evidence. They were properly issued upon probable cause as set forth in the accompanying affidavits of Investigator Merchant. *Illinois v. Gates*, 462 U.S. 213 (1983).

As noted earlier, much of the testimony in this case is in serious conflict. The testimony and argument on behalf of the Defendant would suggest government misconduct of the most reprehensible kind. The testimony and argument of the Commonwealth would suggest no improprieties by the law enforcement officers connected with the investigation, and that, to the contrary, this investigation was an exemplary one. On this Motion to Suppress, the Court must focus its attention on the issues raised by the motion, the evidence relevant to those issues, and what, if any, misconduct relative to a determination

of those issues may have been proven within the context of the burden resting upon the Commonwealth at this stage of the proceedings.

More particularly, with respect to each of the items sought to be suppressed, the Court reaches the following findings.

(1) *Fingerprints of the Defendant (K1-K2) Taken on the Evening of July 22, 1991, at the Starkey Home*

The Court finds that the Commonwealth has met its burden of proving that the fingerprints were freely given by the Defendant and were not the product of an illegal detention. This case may be clearly distinguished from the facts set forth in *Davis v. Mississippi*, 394 U.S. 721 (1969). In *Davis*, the fingerprints sought to be used were obtained from a person who was seized, transported ninety miles to jail and confined overnight without probable cause or a warrant of arrest.

Even the Court in *Davis* recognized that under certain circumstances, the Fourth Amendment might admit the taking of fingerprints during a limited detention without probable cause. However, the Court in this case noted it would not consider whether or not such a limited detention was appropriate. No seizure of the person of the Defendant had occurred. *Florida v. Bostick*, ____ U.S. ____, 111 S. Ct. 2382 (1991). The test to be applied in determining whether or not Mr. Starkey was seized in a Fourth Amendment sense is whether:

> [i]n such a situation . . . a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. *Florida v. Bostick, supra*, at 2387.

The majority in *Bostick* went further to find that "the reasonable person test presupposes an innocent person." *Florida v. Bostick, supra*, at 2388.

In the instant case, the Defendant was in his home. The officer was there without a warrant. Applying the old maxim "a man's house is his castle" to the instant situation, the Court can envision no more secure surrounding to direct police conduct and dictate the terms under which a person might decline a request for fingerprints or photographs. Taking into consideration the totality of the circumstances surrounding the instant encounter, the Court finds that the Commonwealth has demonstrated that the fingerprints and photographs are the products of a reasonable exercise of the authority of the police to investigate.

(2) *The Accused's Photographs Taken On Or About July 22, 1991, In His Home*

The analysis of this Court with respect to the taking of fingerprints is equally applicable to the taking of photographs. As with the fingerprints, the motion to suppress the photographs is *denied*.

(3) *The Accused's Statements*

The Court has previously made certain factual findings relative to the taking of statements from the Defendant. Based upon the evidence, the Court has found that the Commonwealth has met its burden of proving by a preponderance of the evidence that the statements were freely and voluntarily given after a conscious, intelligent and freely given waiver of his rights under *Miranda v. Arizona, supra.* Thus, the Commonwealth having met this "heavy burden" imposed upon it to demonstrate a knowing and intelligent waiver, the Court will permit consideration of the statements by the trier of fact in this case. The Motion to Suppress is *denied* as to those statements.

(4) *A Ruger "Blackhawk" .357 Pistol, Box of Cartridges, Nike Shoe Box Containing Miscellaneous Papers, etc., Lifting and Photographing of the Fingerprint on the Cartridge Box*

These items sought to be suppressed were seized by Investigator Simpson in the Defendant's bedroom at the Starkey house on the evening of July 22, 1991. At the time of their seizure, Officer Simpson had sufficient probable cause to arrest the Defendant. While Simpson and Starkey differ in their testimony as to why and under what circumstances the Defendant reentered the house, the Commonwealth has met its burden of demonstrating that Simpson had probable cause to arrest the Defendant and that sufficient exigent circumstances were present to justify a warrantless entry of the Starkey house and arrest of the Defendant. As noted earlier, the arrest of the Defendant justified the warrantless seizure of the box and its contents. As the box and its contents were properly seized incident to a lawful arrest, any evidence derived therefrom would not be excluded under the "fruit of the poisonous tree doctrine." The motion to suppress these items is *denied*.

(5) *Statements Allegedly Made By The Accused in the Presence of Investigator Simpson Following His Warrantless Entry*

As the Court has previously found, the Commonwealth has met its burden of demonstrating a proper waiver of the *Miranda* warnings prior to Simpson's entry into the house. This would continue as to any statements made in the bedroom. As the Commonwealth has met its burden of demonstrating that the *Miranda* warnings were given and a proper waiver of those rights, the Court need not determine as between the Defendant's father and the officer as to who asked the whereabouts of the firearm. In removing the box, the Defendant's father merely acted on a request of the officer. Lastly, assuming that Officer Simpson demanded to know where the gun was, such a request would have been reasonable for his own safety and those in the room. *New York v. Quarles*, 467 U.S. 649 (1984). The Motion to Suppress is *denied* as to these statements.

(6) *Statements Recorded Following The Accused's Appearance Before The Magistrate*

The Court has previously determined that the Commonwealth has met its burden demonstrating a proper waiver of the Defendant's *Miranda* rights and of the voluntariness of his confession. In addition, the Defendant asserts as an additional ground for excluding the statements made by the Defendant in the jail, that the taking of such statements is violative of Mr. Starkey's Sixth Amendment right to counsel. He asserts that his entitlement to counsel under the Sixth Amendment was triggered by his appearance before the magistrate and the initiation of formal proceedings against him by a warrant of arrest. The Court finds that the evidence does not demonstrate that the Defendant asserted his right to counsel prior to questioning at the jail, either at the Magistrate's office or elsewhere. The waiver of the *Miranda* rights by the Defendant continued until that waiver was unequivocally withdrawn. *Washington v. Commonwealth*, 228 Va. 535 (1984), *cert. denied*, 105 S. Ct. 2347 (1985). The *Miranda* warnings were sufficient to apprise the Defendant of his Sixth Amendment right to counsel, and the waiver executed by him was sufficient to constitute a waiver of that right. *Patterson v. Illinois*, 487 U.S. 285, 108 S. Ct. 2389 (1988). Accordingly, the Court will *deny* the motion to suppress the statements given by the Defendant later that morning in the jail.

(7) *Pair of Black Adidas Tennis Shoes, and Blue Plaid Long Sleeve Flannel Shirt*

As noted earlier, where items were seized pursuant to a validly issued search warrant, the affidavit sets forth sufficient facts to establish probable cause for the issuance of the warrant. As the Court has determined the matters referred to in the affidavit were not the product of improper police conduct, the seizure under the warrant is not the "fruit of the poisonous tree." Accordingly, the motion to suppress these items is *denied.*

(8) *Reebok Shoes Taken From the Accused in Jail*

In his testimony at the suppression hearing, Investigator Merchant, the officer who furnished the information contained in the affidavit, testified that the Defendant had told him that the shoes sought (Reeboks) in the jail were acquired with the stolen money. In the taped interview, Starkey stated that he had purchased shoes with money taken during the robbery. At the suppression hearing, he testified that he had acquired the shoes long before the incident.

In passing, the Court finds that it need not address the issue as to whether a warrant was required in this case. Given the uncertainty of the application of *Hudson v. Palmer*, 468 U.S. 517 (1984), to pretrial detainees, prudent police practices would have dictated that a warrant be obtained. *See generally* La Fave, *Search and Seizure*, Vol. 4, § 10.9(9) (2d. ed., 1987).

The Court finds that the Defendant has failed to carry his burden of demonstrating by a preponderance of the evidence that the statements of Investigator Merchant contained in the affidavit were false, or if false, that they were knowingly or intentionally made or made in reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154 (1978); *Neustadter v. Commonwealth*, 12 Va. App. 273 (1991); affd. (rehearing *en banc*) 13 Va. App. 283 (1991). Accordingly, the motion to suppress the Reebok shoes is *denied.*

(9) *Letters From Robert Starkey*

To the extent these letters were obtained by a third party, not an agent of the government, the Fourth Amendment proscription would not be applicable. *Duarte v. Commonwealth*, 12 Va. App. 1023 (1991). The test to be applied in this case is whether the seizure of the letters:

> was conducted by an officer of the government or someone working at the government's direction rather than a private individual acting on his own initiative. *Duarte*, at 1025.

To the extent the letters were not seized by an agent of the government, the motion as to such letters is *denied*.

(10) *Expert Opinions Based Upon Comparisons Made of Suppressed Evidence*

For the reasons previously stated, the motion to suppress individual items of evidence was denied. Accordingly, the Defendant cannot rely upon such ground as a predicate to the exclusion of individual scientific tests. The motion to suppress expert opinions is *denied*.