# CIRCUIT COURT OF BEDFORD COUNTY

Commonwealth of Virginia

v.

Andre Eugene Evans

January 21, 1999

BY JUDGE JAMES W. UPDIKE, JR.

The captioned matter is presently before the Court on the Commonwealth's motion requesting that the testimony given by Rodney Morris during the preliminary hearing in this case be admitted at trial. Rodney Morris died after the preliminary hearing and the defendant objects to the introduction of Morris's prior testimony. I have now reviewed and considered the briefs submitted by counsel, the oral arguments of counsel, the transcript of Rodney Morris's testimony at the preliminary hearing, and a transcript of a statement given by Rodney Morris to police officers on December 11, 1997.

During the hearing on this motion on December 4, 1998, I read into the record portions of certain cases that address the issue of the admissibility of prior sworn testimony of an unavailable witness.

As stated during the hearing of December 4, 1998, I feel the case of *Shifflett v. Commonwealth*, 218 Va. 25, 235 S.E.2d 316 (1977), has particular relevance to this case because in *Shifflett*, the chief witness for the Commonwealth died after his testimony at the preliminary hearing but before the trial. Unlike the situation in the present case, the testimony at the preliminary hearing in *Shifflett* was not recorded. When ruling the prior testimony to be admissible, the Supreme Court stated:

> The fact that there was no formal record of the preliminary hearing proceedings will not, in and of itself, operate to exclude the testimony of the deceased witness on the ground that it is at variance with the hearsay exception requirement. The overwhelming weight of

authority supports the rule that in criminal cases the preliminary hearing testimony of a witness who is absent from the subsequent trial because of death may be proved by the *oral testimony* of a person who was present at the former trial and heard the witness testify. In applying this rule, however, it must be shown: (1) that the witness is dead; (2) that the testimony of the witness was given under oath (or in such form of affirmation that is legally sufficient); (3) that the person who seeks to relate the testimony of the absent witness can state the subject matter with clarity and in detail; and (4) that the party against whom the witness was offered was present with counsel and was afforded the opportunity of cross-examination.

218 Va. at 28.

Similarly, in *Fisher v. Commonwealth*, 217 Va. 808, 232 S.E.2d 798 (1977), an eye witness who testified against the defendant at his preliminary hearing on a charge of murder, died before trial. The transcript of the deceased witness's testimony at the preliminary hearing was read to the jury over defendant's objection. Specifically, the defendant objected that his constitutional right to confront witnesses against him was violated because "the jury was deprived of the 'opportunity to observe the appearance and demeanor of the witness,' and because 'the limitation of cross-examination at a preliminary hearing held only to establish probable cause is not the type of confrontation that satisfies either' the Federal or state constitutional guarantees." 217 Va. at 811-12. The Supreme Court disagreed, and, when affirming the trial court's admission of the previous testimony, the Court discussed such cases as the following: *Parks v. Commonwealth*, 109 Va. 807, 63 S.E. 462 (1909); *Mattox v. United States*, 156 U.S. 237 (1895); *Pointer v. Texas*, 380 U.S. 400 (1965); *Barber v. Page*, 390 U.S. 719 (1968); *California v. Green*, 399 U.S. 149 (1970); *Dutton v. Evans*, 400 U.S. 74 (1970); and *Mancusi v. Stubbs*, 408 U.S. 204 (1972).

The Supreme Court of Virginia then stated:

During the preliminary hearing, one of defendant's two attorneys present at the hearing conducted a vigorous, detailed, and searching cross-examination of McCarthy focusing on the two main issues which later developed at the trial, as far as McCarthy's testimony was concerned, identification of defendant as the assailant, and McCarthy's credibility. The testimony was given under oath in a judicial proceeding which was distinctly adversarial. Hence, the transcript of McCarthy's testimony at the preliminary hearing carried

sufficient indicia of reliability and provided the jury a satisfactory basis for evaluating the truth of his prior statements. Accordingly, we find no constitutional error in permitting the use of the prior testimony to support the murder charge.

217 Va. at 813.

During the hearing in the captioned matter, the defendant, by counsel, stipulated to the following four elements set forth in *Shifflett*: (1) that the witness, Rodney Morris, is dead; (2) that Rodney Morris's testimony at the preliminary hearing was under oath; (3) that the transcript of Rodney Morris's testimony at the preliminary hearing is accurate; and (4) that the defendant was present during the testimony of Rodney Morris at the preliminary hearing, with counsel, who were afforded the opportunity of cross-examination.

The defendant, in oral arguments and in his brief submitted by counsel, argues that a heightened level of scrutiny, providing "the utmost assurances of reliability in the process," should be applied to his case because he is charged with capital murder and therefore faces the possibility of a death sentence. As support for this argument, defendant cites *Woodson v. North Carolina*, 428 U.S. 280 (1976). Though the Supreme Court of the United States does discuss in *Woodson* the application of certain principles of heightened scrutiny in capital murder cases, I understand *Woodson* to be a decision that declared unconstitutional a mandatory death penalty statute that was adopted in response to *Furman v. Georgia*, 408 U.S. 238 (1972). I do not understand *Woodson* to require the application of different rules of evidence in capital murder cases.

As I stated during the hearing of December 4, 1998, I find *Stockton v. Commonwealth*, 241 Va. 192, 402 S.E.2d 196 (1991), a capital murder case, to be instructive in this regard. Though *Stockton* is a case in which a transcript of the defendant's original trial was introduced in his new sentencing hearing, and therefore is a case not factually analogous to the present case, the Supreme Court of Virginia applied in this capital murder case the same established principles regarding admissibility of prior sworn testimony of an unavailable witness as those discussed in such non-capital murder cases as *Shifflett* and *Fisher*. In addition, the defendant in *Stockton* argued, as the defendant in this case argues, the case of *Barber v. Page*, 390 U.S. 719 (1968). The decision in *Barber*, however, focuses upon the issue of whether a witness who was incarcerated in another state was actually unavailable. In the instant case, there is no such issue. Nevertheless, as I previously stated, I find *Stockton* instructive in its application in a capital murder case of established principles regarding admissibility of prior sworn testimony.

4

The defendant in this case also argues, as was argued in *Fisher*, that he was not afforded the opportunity of "due cross-examination" because of the limited issue of probable cause in a preliminary hearing, and because he did not have at the preliminary hearing certain prior statements of Rodney Morris which he alleges to be inconsistent with Morris's sworn testimony. Therefore, defendant essentially argues that the transcript of Rodney Morris's testimony at the preliminary hearing does not carry, in the words of *Fisher*, "sufficient indicia of reliability" and does not provide "the jury a satisfactory basis for evaluating the truth of his prior statements." 217 Va. at 813.

When addressing these issues in *Fisher*, the Supreme Court of Virginia carefully analyzed the transcript of the testimony at the preliminary hearing, and discussed both the length and nature of the cross-examination by defense counsel. As to the length of the cross-examination, the Court noted that defense counsel asked 135 questions, comprising about twenty-eight pages of transcript, which pages also included numerous objections by the prosecutor. The prosecutor asked the witness sixteen questions which comprised approximately five pages of transcript. As to the nature of the cross-examination, the Court specifically discussed numerous questions propounded by defense counsel which focused upon what the Court described as the two main issues later developed at trial: identification of the defendant as the assailant and credibility of the witness.

In the present case, the entire transcript of Rodney Morris's testimony consists of approximately thirty pages. The cross-examination by defense counsel comprises nearly fifteen pages and during this cross-examination there was only one brief objection by the prosecutor. Approximately 105 questions were asked by defense counsel during cross-examination, and redirect examination by the prosecutor consisted of less than one page.

Consequently, nearly one-half of the transcript consists of defense counsel's cross-examination. This cross-examination, though thorough in my opinion, was not quite as lengthy as that described in *Fisher*. However, this exception to the hearsay rule, known as the exception of admission of prior sworn testimony of an unavailable witness, is repeatedly described in numerous cases and legal treatises as an exception established by overwhelming authority. I do not believe, therefore, that application of this well-established exception to the hearsay rule is controlled by mere percentages derived from relating the length of cross-examination to the testimony in its entirety or by quantifying the questions asked. Nevertheless, the length of cross-examination is without question a factor to be considered in the context of the case itself.

Of more importance, in my opinion, is the nature of the cross-examination. The Commonwealth, in its addendum to its motion to admit this testimony, offers a rather detailed analysis of the nature of the questions asked during cross-examination. I verified these questions in the transcript of the preliminary hearing and I adopt the Commonwealth's arguments in this regard for purposes of this opinion.

I, of course, do not know the main issues that will later be developed at trial, but, during the cross-examination of Rodney Morris at the preliminary hearing, much focus was placed upon the circumstances preceding the shooting. Moreover, the arguments of defendant concerning the statement of Rodney Morris to police officers on December 11, 1997, relate to the circumstances preceding the shooting. In this regard, during cross-examination, defense counsel propounded questions and received answers as to the following: that Rodney Morris had a verbal confrontation with the defendant before the shooting (t.p. 46); that Rodney Morris was a "little angry" and "a little hot" about this confrontation (t.p. 46 and 47); that he told Timbo (Timothy Robinson) about the confrontation knowing that Timbo "ain't gonna allow nobody who he's close to, you know what I'm saying, for anybody to mess with them" (t.p. 48); that Timbo became angry (t.p. 48); that Timbo and Rodney Morris went "to talk to" the defendant (t.p. 49); that Timbo tried to stop the defendant, who was in his truck, but the defendant "kept going" (t.p. 49); that upon the arrival of Rosa Carson, Rodney Morris's godmother, she became angry (t.p. 50); that Timbo and Rosa Carson went to "confront" the defendant (t.p. 50); that Rodney Morris was "still angry" at this point (t.p. 51 and 52); and that Timbo and the defendant were arguing before the shooting but that Rodney Morris "couldn't hear any words" (t.p. 52).

I also feel it important that, though defendant did not have at the preliminary hearing the statement given by Rodney Morris to police officers on December 11, 1997, particularly the statement which defendant describes as an admission of a plan to get Timothy Robinson to confront the defendant, Rodney Morris did admit on cross-examination, as previously emphasized, that he told Timothy Robinson about his confrontation with the defendant, knowing that Robinson "ain't gonna allow nobody who he's close to, you know what I'm saying, for anybody to mess with them" (t.p. 48). In my opinion, the substance of this admission by Rodney Morris on cross-examination is essentially the same as that stated to police officers on December 11, 1997.

As to the credibility of Rodney Morris, defense counsel demonstrated on cross-examination various inconsistencies in his testimony, including inconsistencies as to the location of individuals before the shooting and what

was said before the shooting. Rodney Morris was not asked for purposes of impeachment whether he had ever been convicted of a felony or a crime involving moral turpitude, and in my opinion, this question should not have been asked without evidence of such convictions. However, if this was an oversight, extrinsic evidence of any impeachable offenses may be presented at trial.

I do not believe that counsel for defendant asked every question that she would have asked if she had known that Rodney Morris would not be available for trial. However, this may be true of the Commonwealth as well. Nevertheless, I do not believe that due cross-examination means perfect cross-examination or that clairvoyance is required of trial counsel. If this were so, this well-established exception to the hearsay rule, supported, as previously stated, by overwhelming authority, would never be applied, or at the very least, could never have achieved such established status.

I therefore rule that the defendant had the opportunity of due cross-examination of Rodney Morris during the preliminary hearing in this case and that all requirements for the admission of the prior sworn testimony of an unavailable witness have been satisfied as an exception to the hearsay rule and as required by constitutional guarantees of cross-examination and confrontation of witnesses. I therefore grant the Commonwealth's motion to admit as evidence in the trial of this case the sworn testimony given by Rodney Morris during the preliminary hearing in this case.

To further ensure all possible indicia of reliability and a satisfactory basis for the trier of fact to evaluate the truth of the earlier testimony, I specifically order the Commonwealth to provide defendant with all evidence bearing upon the credibility of Rodney Morris, including all evidence of any impeachable offenses, any prior inconsistent statements, and any evidence of bias or prejudice. Upon the introduction by the Commonwealth of the prior testimony of Rodney Morris, any evidence bearing upon the credibility of Rodney Morris will be admitted, upon request of the defendant, to the same extent such evidence would be admitted if Rodney Morris could actually testify. I specifically rule that the statement of Rodney Morris to police officers on December 11, 1997, will be admitted upon request by the defendant. Passing reference has been made to another statement made by Rodney Morris, but this statement was not presented for my review. I therefore will not rule upon the admissibility of this statement at this time, but I will state that it is my intent to extend the defendant latitude in this regard.

Obviously, all rulings I have stated in this opinion concerning the admissibility of evidence are contingent upon compliance with the rules of evidence in all other respects.