COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, O'Brien and Russell
Argued at Alexandria, Virginia


CHARLES ALBERT MASSEY, III

                                                                    OPINION BY
v.      Record No. 1421-15-4                       JUDGE WESLEY G. RUSSELL, JR.
                                                                 DECEMBER 13, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Patrick M. Blanch (Zinicola, Blanch & Overand, PLLC, on briefs),
for appellant.[1]

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Charles Albert Massey, III, appellant, was convicted by a jury of abduction with intent to

defile in violation of Code § 18.2-48 and two counts of rape in violation of Code § 18.2-61. On

appeal, he contends the trial court erred by: (1) denying his motion for a new trial because the

Commonwealth failed to timely disclose exculpatory evidence; (2) not finding certain police

reports exculpatory; (3) admitting into evidence the preliminary hearing testimony of the victim

during the Commonwealth's case-in-chief[2]; and (4) excluding a text message the victim sent to a

friend on the day of the preliminary hearing.

---

[1] Appellant was represented by different counsel from the time of the preliminary hearing
through the jury's verdict. His present counsel represented him regarding the post-trial motions
and on appeal.

[2] The Honorable Charles J. Maxfield presided over the proceedings that are the subject of
these issues on appeal.

BACKGROUND

Preliminary Hearing

Appellant was arrested on September 4, 2013, for two counts of rape and one count of simple abduction. The preliminary hearing was held on November 1, 2013, in the Fairfax County Juvenile & Domestic Relations District Court. The victim, P.E., testified that she previously had been engaged to appellant and had lived with him for approximately nine months. They broke off the engagement in April of 2013 after she was released from a five-day involuntary stay in a rehabilitation facility. Her time in the rehabilitation facility was the result of the combined efforts of her father and the appellant to place her there.

P.E. stated that appellant telephoned her late at night on September 3, 2013, because he needed to talk to someone about the difficult time he was having in coping with a sick grandmother. She allowed him to visit her at her studio apartment in Fairfax, and he arrived close to midnight. After trying to console appellant, she asked him to leave because it was late and she needed to be at work early the next morning. Appellant did not want to go and indicated that he would sleep on the couch. Initially, P.E. agreed, but she was unable to sleep and felt uncomfortable with appellant being in her apartment. Again, she asked him to leave, but he refused.

P.E. testified that she opened the door for appellant to leave, but he shut the door and dragged P.E. towards her bed. He threw her onto her bed and raped her twice. At some point during the night he struck her in the face and strangled her until she "black[ed] out or nearly black[ed] out." The next morning, appellant allowed P.E. to get dressed, but did not permit her to go to work because of the bruising on her face. He drove them to a house in Alexandria where they used to live so that appellant could pack some of his belongings for a trip to his home state of Mississippi. Before leaving the house, appellant bound P.E.'s hands and feet with clear

- 2 -

packing tape, covered her in a blanket, and placed her in the back seat of his car.  Appellant eventually removed the tape from P.E. and left her on a road near her parents' home in Fairfax.

On cross-examination, defense counsel asked P.E. several questions that P.E. claimed she was unable to answer, including the following:

> [Appellant's Counsel]:  Tell me, when was the first time you had sex with him after you broke off the engagement?
>
> [P.E.:]  I don't recall.
>
> [Appellant's Counsel]:  Well, was it a matter of days[?]  Would you agree with that?
>
> [P.E.:]  I'm not sure.

P.E. admitted that, while intoxicated, she telephoned appellant from a bar on June 13, 2013, and he took her home, yet she did not remember whether she had sex with him on that occasion.  She also remembered that she was in a bar on July 13, 2013, and called appellant on that night.  She stated that "[i]t's possible" that she had sex with him that evening.  P.E. also called appellant from her parents' house in July, and indicated that it's "possible" she had sex with him at that time, although she was too drunk to remember.  P.E. was also questioned about her stay with appellant in August:

> [Appellant's Counsel]:  Did you or did you not stay in his house for fifteen days out of the thirty days in August of this year?
>
> [P.E.:]  Yes.
>
> [Appellant's Counsel]:  Yes, and do you remember those nights?
>
> [P.E.:]  Not particularly, no.
>
> [Appellant's Counsel]:  Why?
>
> [P.E.:]  I guess I just tried to block them out.

> [Appellant's Counsel]: Well, was there drinking and sex on some or all of those nights?
>
> [P.E.:] Maybe some.

Other instances of lapses in memory included her inability to remember if she exchanged text messages with appellant on September 3, 2013, whether there was any discussion about who used the condoms beside her bed, whether she remembered throwing appellant's keys on September 3, and whether she communicated with "Adam" on September 4.

In response to P.E. stating that appellant "usually told my dad that I had problems or issues, and that he was trying to help me[,]" counsel asked P.E., "Didn't [appellant] and your father collaborate on that path to help you?" P.E. replied "Yes."

After P.E.'s response, the Commonwealth objected to the line of questioning on the basis of relevance, and the court sustained the objection. In response, appellant's counsel stated "All right." At that time, he neither presented an argument designed to overcome the objection nor did he proffer questions he would have asked or answers he expected to receive to any such questions but for the court's ruling on the Commonwealth's objection.

The district court certified all charges to the grand jury. The grand jury returned four indictments. In addition to the charges that were pending at the time of the preliminary hearing, the grand jury indicted appellant for an additional charge — abduction with the intent to defile in violation of Code § 18.2-48.

## Trial

P.E. died prior to trial. Appellant filed a motion *in limine* to exclude P.E.'s preliminary hearing testimony from his trial arguing that introduction of the preliminary hearing transcript violated Rule 2:804(b)(1) and appellant's Sixth Amendment right of confrontation. Specifically, appellant argued in the motion that the preliminary hearing transcript should not be read at trial because "defense counsel was precluded during his cross-examination from inquiring into

- 4 -

several important matters" and because "after the preliminary hearing, through the course of discovery, the Commonwealth produced to defense counsel numerous materials that contradict [P.E.'s] testimony that could have been used to contradict" her.[3]

The court allowed the transcript of P.E.'s testimony to be read into evidence in its entirety.[4] Thus, the jury heard P.E.'s statements regarding a lack of memory and her affirmative response to the question, "Didn't [appellant] and your father collaborate on that path to help you?"

Patricia Taylor, an acquaintance of appellant, testified at appellant's jury trial that she spoke with appellant at 12:30 p.m. on September 4. Appellant told Taylor that he thought he needed help. He told her that he and P.E. had fought and that he "kind of made her have sex with [him]." Taylor asked if he had sexually assaulted P.E., and his response was "Yes." He also told Taylor he had bound P.E. with tape, wrapped her in a blanket, and driven her to her father's home.

The Commonwealth called Elizabeth Roach, a Sexual Assault Nurse Examiner who works at INOVA Fairfax Hospital. Roach performed a sexual assault examination on P.E. on September 4, 2013. Roach testified in detail about the numerous bruises and abrasions P.E. had over significant portions of her body. She testified that her examination revealed a reddened area on the hymen, indicating a fresh injury. She agreed that the injury was consistent with a report

---

[3] Although appellant's motion *in limine* did not specifically reference Brady v. Maryland, 373 U.S. 83 (1963), it detailed information that was, at the time of the preliminary hearing, in the Commonwealth's possession and that appellant contended was exculpatory. Accordingly, the motion *in limine* sufficiently preserved appellant's Brady argument for appellate review.

[4] Only counsel's questions and P.E.'s answers were read at trial; the jury did not hear and therefore was not aware of any objections that had been raised at the preliminary hearing or how the judge resolved those objections.

- 5 -

of "forcible penile vaginal penetration." Roach also testified regarding P.E.'s report to her on the morning of September 4. According to Roach, P.E. reported that, the previous night,

> she had been in her apartment. Her ex-fiancée was there. He was not allowing her to leave. She said he had forcible penile vaginal penetration with her twice, on two occasions. That he strangled her on several occasions. She — he also suffocated her by putting his hand over her nose and mouth, making it difficult for her to breathe. And on another occasion, stuck a sheet into her mouth to make it difficult for her to breathe, so that — she felt that it was so she wouldn't scream. She said that her hands and her feet were bound with the tape and that she was wrapped in a blanket and put in the back seat of the car and removed.

Roach also testified, without objection, that "post-traumatic stress" causes victims of sexual assault to have memory issues. Comparing memories of the sexual assault to a deck of cards, Roach testified that "it takes [victims] a while to retrieve all the cards. Sometimes they never retrieve them in their lifetime; sometimes they may retrieve a card years or months later. So they have a hard time . . . to tell a story in a complete start to finish." Roach also stated that post-traumatic stress can explain why a sexual assault victim may give inconsistent accounts of the same event to different people.

Appellant testified that he and P.E. fought on the night of September 3, 2013. They engaged in a mutual physical fight and then engaged in consensual sex as a way to make up. Appellant testified that, prior to the sexual activity, P.E. had asked him to leave and opened the door to the apartment so that he could leave. Appellant acknowledged refusing to leave and closing the door. Furthermore, he claimed that P.E. threatened to scream if he did not leave, began screaming when he refused, and that he grabbed her and placed his hand over her mouth, apparently for the purpose of muffling her screams. He claimed to have done this in an effort to get her to "calm down." Appellant admitted to hitting P.E. in the past and binding her wrists and ankles on this occasion. He also acknowledged that he told Taylor that he "kind of made [P.E.] have sex with [him]."

Over the course of trial, multiple text messages that had been sent by P.E. were introduced. Regarding her appearance at the preliminary hearing, P.E. texted a friend that appellant's "attorney was an idiot and when he cross examined me I gave him nothing to work with . . . . It was almost fun. I even questioned him when he was talking about irrelevant info, but the judge got a little upset with me for that[.]" Regarding her testimony, she texted another friend that

> I kinda wish you could've seen the way I handled the cross examination with his retarded lawyer, I gave him nothing. And it was awesome. . . . He was throwing all sorts of stupid shit out at me about me being in a bar on August 13th and whatnot and when I respond with I don't recall he couldn't do anything with it[.]

Appellant sought to introduce yet another text message P.E. sent to a friend the morning of the preliminary hearing. In the text message, which was marked as Defendant's Exhibit 14 for identification, P.E. wrote "Is it sick that I'm making myself look really good right now just to piss him off?" Although appellant initially withdrew the exhibit in response to the Commonwealth's objection, he eventually changed course and sought its admission, arguing that it showed animus against him and reflected a present sense impression of P.E. shortly before her preliminary hearing testimony. The Commonwealth objected on the grounds that it was hearsay not within any exception. The trial court refused to admit Defendant's Exhibit 14 into evidence on the grounds that it was not relevant.

Both parties called Detective David Kroll of the Fairfax County Police Department in their respective cases. Detective Kroll was the member of the Major Crime Division, Adult Sex Unit, who investigated the events. In the Commonwealth's case, Detective Kroll testified regarding his investigation, his interactions with P.E., and evidence that was collected as part of the investigation. In appellant's case, Detective Kroll was examined extensively regarding potential inconsistencies in P.E.'s story. Of particular note, Detective Kroll acknowledged that

P.E. initially had claimed to have been on the lease for appellant's residence but later admitted she was not.

Appellant also introduced a nude photograph of P.E. that showed her posed on a bed while holding a wine glass. The photograph was taken some time prior to the events in question. The Commonwealth objected to the relevance of the photograph. Appellant noted that, during her preliminary hearing testimony, P.E. had testified that she had never allowed appellant to take nude photographs of her, and therefore, the apparently posed picture called her credibility into question. The trial court admitted the photograph into evidence.

Ultimately, the jury convicted appellant of two counts of rape and one count of abduction with the intent to defile.[5] On May 18, 2015, appellant filed a motion to dismiss or, in the alternative, to set aside the verdict alleging a violation of Brady v. Maryland, 373 U.S. 83 (1963). Specifically, he argued that, prior to her preliminary hearing testimony, the Commonwealth was in possession of information that could have been used to attack P.E.'s credibility and that the failure to disclose such information prior to the testimony being given should have resulted in her preliminary hearing testimony being excluded at trial. The trial court denied the motion.[6]

On appeal, appellant raises nine assignments of error. Eight of the assignments of error take issue with the decision of the trial court to admit P.E.'s preliminary hearing testimony into evidence at trial. The ninth assignment of error challenges the trial court's exclusion of Defendant's Exhibit 14.

---

[5] The jury also convicted appellant of simple abduction. Post-trial, appellant argued that, at most, the evidence established one continuous abduction from the confrontation at P.E.'s door, throughout the rapes, and until P.E. was released near her parents' home the next day. The trial court agreed and set aside the simple abduction conviction.

[6] The next day, appellant filed another motion to set aside the verdict. The trial court denied the motion except for the portion that sought dismissal of one of the abduction counts.

ANALYSIS

I. Admission of Preliminary Hearing Testimony at Trial

It is well established that, when a witness dies after testifying at a preliminary hearing, the preliminary hearing testimony may be read into evidence at trial so long as certain safeguards have been met. As the Virginia Supreme Court has held,

> the preliminary hearing testimony of a witness who is absent at a subsequent criminal trial may be admitted into evidence if the following conditions are satisfied: (1) that the witness is presently unavailable; (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient); (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the party against whom the prior testimony is offered was present, and represented by counsel, at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing.

Longshore v. Commonwealth, 260 Va. 3, 3-4, 530 S.E.2d 146, 146 (2000); see also Va. R. Evid. 2:804(b)(1). Here, appellant does not challenge that the preliminary hearing transcript is an accurate recitation of P.E.'s prior testimony. He readily concedes that P.E. testified under oath at the preliminary hearing, that her death rendered P.E. unavailable at trial, and that his counsel appeared at the preliminary hearing and cross-examined P.E.

Rather, he argues that various circumstances combined to deny his counsel the ability to conduct an *effective* cross-examination of P.E. at the preliminary hearing. He argues that his inability to conduct an effective cross-examination denied him his Sixth Amendment right to confront his accuser, and therefore, it was error for the trial court to admit P.E.'s preliminary hearing testimony at his trial.[7]

---

[7] In pertinent part, the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him."

Although appellant asserts eight assignments of error regarding the admission of P.E.'s preliminary hearing testimony at trial, the alleged errors can be divided into five categories: (1) the cross-examination at the preliminary hearing was defective because the Commonwealth failed to timely disclose information it was required to disclose pursuant to Brady, (2) the cross-examination at the preliminary hearing was defective because potential impeachment evidence that was not subject to disclosure under Brady was discovered by the defense after the preliminary hearing, (3) the cross-examination at the preliminary hearing was defective because the judge at the preliminary hearing improperly limited its scope, (4) P.E.'s repeated failure to remember things during the cross-examination at the preliminary hearing rendered her "unavailable" for cross-examination, and (5) the cross-examination at the preliminary hearing was defective because the charges appellant faced changed after the preliminary hearing. We address each contention in turn.

## A. Alleged Brady Violations

Appellant argues that he was denied his right of confrontation because the Commonwealth failed to disclose inconsistent statements, one explicit and one implicit, made by P.E. that were in the Commonwealth's possession and could have been used to impeach P.E. Specifically, appellant notes that the Commonwealth was aware that, during the investigation, P.E. had claimed that she was on the lease for appellant's residence, but later conceded she was not. Appellant also argues that the Commonwealth was required to disclose that P.E. told the officers investigating the current offenses that appellant "was getting aggressive and holding [her] arms or pushing" her during an incident in Alexandria on June 5, 2013, but the Alexandria Police Department's contact form regarding the June 5, 2013 incident indicated that P.E. "stated that [appellant] has assaulted her in the past but not tonight." Appellant argues that this

constitutes an inconsistent statement because her later statement to investigators in Fairfax indicates an assault took place on June 5, 2013.[8]

The Commonwealth argues that there was no Brady violation because the statements were disclosed by the Commonwealth more than a year prior to trial. Thus, the Commonwealth asserts that its Brady obligation was satisfied even though, because of P.E.'s intervening death, appellant did not have the statements when he was in a position to cross-examine P.E. Alternatively, the Commonwealth argues that appellant has not demonstrated that the statements were of such a quality or character that would require reversal of the jury's verdict. Because we find that, due to the nature of the statements, appellant has failed to satisfy the elements necessary for a finding of a Brady violation, we need not and do not address the Commonwealth's argument that disclosure before trial but after the relevant testimony was given at the preliminary hearing was sufficient to satisfy any Brady obligation.

"A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869 (2006). "Brady obligations extend not only to exculpatory evidence, but also to impeachment evidence[.]" Coley v. Commonwealth, 55 Va. App. 624, 630, 688 S.E.2d 288, 292 (2010). To establish a Brady violation, a defendant must establish that:

> a) The evidence not disclosed to the accused must be favorable to the accused, either because it is exculpatory, or because it may be used for impeachment; b) the evidence not disclosed must have been withheld by the Commonwealth either willfully or inadvertently; and c) the accused must have been prejudiced.

Hicks v. Dir., Dep't of Corr., 289 Va. 288, 299, 768 S.E.2d 415, 420 (2015) (quoting Workman v. Commonwealth, 272 Va. 633, 644-45, 636 S.E.2d 368, 374 (2006)).

---

[8] For purposes of our analysis, we will assume without deciding that P.E.'s statement to the Alexandria police on June 5, 2013, that she was not assaulted on that occasion is inconsistent with her later description of the June 5, 2013 incident to Fairfax police.

Appellant argues that the identified inconsistent statements constitute impeachment material, and thus, he satisfies the first <u>Brady</u> element.[9] It is true that, in general, a witness may be impeached through the use of prior inconsistent statements. <u>See</u> Va. R. Evid. 2:607(a)(vi) and 2:613. However, the mere fact that prior to testifying, a witness has made multiple statements that are inconsistent with each other does not render such inconsistencies admissible in a judicial proceeding.

The method for introducing extrinsic evidence regarding prior inconsistent oral statements for the purpose of impeaching a witness' testimony is set forth in Virginia Rule of Evidence 2:613(a)(ii). In addition, the rule provides that "[e]xtrinsic evidence of collateral statements is not admissible."

> [T]he test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether . . . the cross-examining party would be entitled to prove it in support of his case. Therefore, when the circumstances [of the other event] have no intimate connection with the main fact; if they constitute no link in the chain of evidence . . . they ought to be excluded. Evidence . . . *which cannot be used for any purpose other than for impeachment* . . . is certainly collateral to the main issue.

<u>McGowan v. Commonwealth</u>, 274 Va. 689, 695, 652 S.E.2d 103, 105-06 (2007) (emphasis added) (internal quotation marks and citations omitted) (brackets in original).

Under this standard, the statements appellant contends that he was denied the use of are clearly collateral. First, we note that, although there is evidence that P.E. made statements that were inconsistent *with each other*, none of the pertinent statements identified by appellant as potential <u>Brady</u> material are inconsistent with P.E.'s preliminary hearing *testimony*. At the preliminary hearing, P.E. did not testify as to who was on the lease of appellant's residence or whether appellant assaulted her on June 5, 2013. Furthermore, neither the identity of who was

---

[9] Appellant does not argue that the statements were exculpatory in and of themselves, rather he limits his argument to his desire to use the statements to impeach P.E.'s credibility.

on the lease of the Alexandria residence nor whether there had been an assault on June 5, 2013, shed any light on the question of whether or not appellant raped and abducted P.E. in September 2013.

Because the relevant statements are merely collateral, appellant could not have used them to impeach P.E. at the preliminary hearing. As such, appellant has failed to establish that "[t]he evidence not disclosed to the accused [was] favorable to the accused . . . because it may [have been] used for impeachment," and therefore, has failed to establish that the Commonwealth violated its obligations under Brady. Workman, 272 Va. at 644, 636 S.E.2d at 374.

Even if the statements could have been utilized in the examination of P.E., appellant has not made the necessary showing of prejudice required by Brady. To establish the necessary prejudice, appellant must show that the statements were material. For Brady purposes,

> [e]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. However, it is not necessary to demonstrate by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. A conviction must be reversed if the accused shows that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Coley, 55 Va. App. at 631, 688 S.E.2d at 292 (internal quotation marks and citations omitted). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Hicks, 289 Va. at 299, 768 S.E.2d at 420 (internal quotation marks and citations omitted).

Here, the verdict is worthy of confidence. As described above, the subject statements do not directly touch on appellant's guilt or innocence of the crimes charged, but deal with purely collateral matters that would not have been properly admitted and are unlikely to have had any

- 13 -

effect on the jury's verdict if they had been admitted. The only possible use of the statements was to call P.E.'s credibility into question, something that appellant was able to do through other means, including the introduction of multiple text messages from P.E.

Furthermore, the record contains other evidence of appellant's guilt, ranging from the testimony of Taylor and Roach to the appellant's damning acknowledgements that he "kind of made [P.E.] have sex with [him]," that he sexually assaulted P.E., and that he bound P.E. with tape before dropping her off near her parents' home.

Finally, we know that at least one of the statements would not have changed the jury's ultimate conclusion because the jury became aware of the statement through other means. Detective Kroll testified at trial that P.E. initially had said she was on the lease of the Alexandria residence only to admit later she was not. In short, the record as a whole leaves little doubt that the appellant not becoming aware of the statements until after P.E.'s preliminary hearing testimony had no effect on the outcome of the trial. Accordingly, appellant has not established the requisite prejudice to make a successful challenge under Brady.

B. Discovery of Non-Brady Impeachment Material after the Preliminary Hearing

Appellant next challenges the admission of P.E.'s preliminary hearing testimony at trial by arguing that he first learned of other evidence that could have been used to impeach P.E. only after she testified. For example, P.E. testified at the preliminary hearing that appellant called her on the night of the rapes. Appellant acknowledges this was true, but notes that subsequently recovered phone records demonstrate that, in addition to receiving a call from appellant that evening, P.E. also called appellant. Additionally, appellant notes that at the preliminary hearing P.E. testified that she did not permit appellant to take nude photographs of her, but eventually a nude photograph of P.E., taken by appellant, was discovered that appears to show P.E. as a willing participant from the manner in which she is posed. Although he received at least some of

this evidence from the Commonwealth, appellant recognizes that it cannot form the basis of a Brady violation because the Commonwealth did not possess it at the time of the preliminary hearing and produced it well before trial.

The fact that additional information that might have been used in the examination of a witness is discovered after the witness testifies does not render the examination infirm. The need for finality requires that witness testimony and trials conclude and not be reopened for claims of newly discovered evidence or potential impeachment material except under the most limited of circumstances. Cf. Rule 1:1; Code § 19.2-327.10 et seq. (regarding proceedings for challenging a conviction with non-biologic, after-discovered evidence).

Moreover, unlike cases where such materials are first discovered after trial, the evidence at issue here was discovered prior to trial, and thus, appellant had the opportunity to, and did in fact, use the material. Appellant used both the phone records and the photograph to raise substantial questions about P.E.'s credibility. The after-discovered impeachment material was placed before the jury, allowing the jury to make a determination as to whether or not it raised a reasonable doubt regarding the ultimate issues — rape and abduction.[10] The jury very well may have concluded that P.E. was less than forthcoming about certain issues, such as her participation in the nude photograph; however, the jury determined that it believed P.E.'s testimony regarding the rapes and the abduction.[11] There is nothing improper or inconsistent about such a conclusion. See Bazemore v. Commonwealth, 42 Va. App. 203, 213, 590 S.E.2d 602, 607

---

[10] Proposed Defendant's Exhibit 14 was not admitted. We address this issue in Section II below.

[11] We once again note that there was other evidence which corroborated P.E.'s testimony regarding the rapes and the abduction, not the least of which was appellant's acknowledgment of his statement to Patricia Taylor that he "kind of made [P.E.] have sex with [him]."

- 15 -

(2004) (recognizing that the factfinder is "free to believe or disbelieve, in part or in whole, the testimony of any witness").

Appellant argues that his inability to utilize the information while examining P.E. in front of the jury dictates a different result. He argues that other means of using the impeachment evidence are not a sufficient substitute for live cross-examination, noting his "inability to cross-examine [P.E.] about all of these inconsistencies and elicit her corresponding reactions at trial. Merely pointing out inconsistencies in her written statements does not satisfy the right to confrontation." In short, appellant argues that he had a right for the factfinder to see P.E. squirm when confronted with the potential inconsistencies.

If appellant were correct in this assertion, the use of prior recorded testimony always would be constitutionally infirm. The unavailability of the witness in such a situation will always deprive the jury of the opportunity to view how the witness reacts when testifying, and yet, even appellant concedes that, at least in theory, such a process does not automatically render the testimony constitutionally suspect. Although it is preferable for the factfinder to observe the demeanor of every witness when making credibility determinations, it simply is not a constitutional requirement. As the United States Supreme Court observed more than a century ago,

> general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. . . . The law, in its wisdom, declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

Mattox v. United States, 156 U.S. 237, 243 (1895). Regarding the right of confrontation, the Court concluded that "[t]he substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." Id. at 244. Because appellant had the opportunity to

cross-examine P.E. at the preliminary hearing and was allowed to introduce the subsequently discovered impeachment materials, his right of confrontation was satisfied in this case.

### C.  Alleged Limitation of Cross-Examination at the Preliminary Hearing

Appellant next asserts that he was denied his right to confront P.E. because the judge at the preliminary hearing impermissibly limited the scope of his cross-examination.  Specifically, he argues that the "preliminary hearing judge limited [appellant]'s cross-examination of [P.E.] on the subject of [appellant]'s efforts to get [P.E.] into rehabilitation, which was the basis of [appellant]'s trial defense [that P.E. was lying], and which related to bias and motive to fabricate."  Because the record is insufficient to support such a conclusion, we disagree with appellant.

Appellant bases his argument that his cross-examination was improperly limited on the following exchange at the preliminary hearing:

> [Appellant's Counsel]: Did [appellant] often talk to your father about the problems that the two of you had?
>
> [P.E.:] Yes, he usually told my dad that I had problems or issues, and that he was trying to help me.
>
> [Appellant's Counsel]: Okay.  Didn't he and your father collaborate on that path to help you?
>
> [P.E.:] Yes.
>
> [Commonwealth]: Your Honor, I'm going to object to relevance at this point.
>
> [Trial Court]: I would sustain the objection.
>
> [Appellant's Counsel]: All right.

No further questions were asked regarding this point, and appellant did not proffer any questions he would have asked or answers he hoped to receive but for the ruling of the court on the Commonwealth's objection.

All of P.E.'s preliminary hearing testimony, including the exchange detailed above was read into evidence at trial. Accordingly, the jury heard P.E.'s acknowledgement that appellant and her father previously had discussed ways to help her. Appellant was free to use that concession to establish that P.E. had a motive to lie against him in hopes of avoiding another trip to a treatment facility or because she resented his efforts in this regard. Thus, the trial court did not prevent appellant from making the argument at issue by sustaining the Commonwealth's objection.

To the extent that appellant is arguing that there were additional questions he would have asked and additional answers he would have received to further his "motive to fabricate" attack on P.E.'s version of events, the record does not permit us to reach such a conclusion. "In Virginia, when testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." Ray v. Commonwealth, 55 Va. App. 647, 649, 688 S.E.2d 879, 880 (2010) (internal quotation marks and citation omitted). For a proffer to be sufficient, it must allow us to examine both the "admissibility of the proposed testimony," and whether, even if admissible, its exclusion "prejudiced" the proffering party. Molina v. Commonwealth, 47 Va. App. 338, 368, 624 S.E.2d 83, 97 (2006) (citations omitted). "The failure to proffer the expected testimony is fatal to [the] claim on appeal." Id. at 367-68,

624 S.E.2d at 97. Here, appellant made no proffer of any kind, and thus, we cannot conclude from this record whether the court below erred in sustaining the Commonwealth's objection.[12]

Even if we could determine that the court below erred in sustaining the Commonwealth's objection, we would still have to determine whether the error constituted harm. Here, appellant failed to establish what questions he would have asked and what the answers to those questions were expected to be. We can determine prejudice only upon "proper proffer showing what the testimony would have been." Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999); Molina, 47 Va. App. at 368, 624 S.E.2d at 97 (citations omitted). Even when "we are not totally in the dark concerning the nature of the evidence," we still must "know enough about the specifics" to be able to "say with assurance" that the lower court committed prejudicial error. Smith v. Hylton, 14 Va. App. 354, 358, 416 S.E.2d 712, 715 (1992). Because the record is silent as to those specifics and sufficient evidence was admitted to allow appellant to make the "motive to fabricate" argument, we cannot say that the ruling on the objection was such that it rendered the cross-examination of P.E. infirm to the point that her preliminary hearing testimony should not have been admitted at trial.

D. Allegation that P.E.'s Lack of Memory at Preliminary Hearing Rendered Her Unavailable for Cross-Examination

In his next challenge to the admission of P.E.'s preliminary hearing testimony, appellant advances the novel argument that his counsel was unable to cross-examine P.E. at the preliminary hearing because she feigned a lack of memory regarding certain lines of inquiry. Appellant bases his claim on Turner v. Commonwealth, 284 Va. 198, 726 S.E.2d 325 (2012), and Jones v. Commonwealth, 22 Va. App. 46, 467 S.E.2d 841 (1996), cases which hold that a

---

[12] We acknowledge that, in the normal course, litigants have no need to offer proffers in preliminary hearings in courts not of record. However, when, as here, the preliminary hearing testimony becomes the trial testimony because of the unavailability of the witness, such a step is necessary to create a sufficient record for appellate review.

witness testifying to a lack of memory is "unavailable" for the purpose of the hearsay exception related to the use of prior testimony. He argues that the multiple instances of P.E. testifying "I don't recall" or only that "it's possible" coupled with the subsequent text messages where she appeared to brag about stonewalling appellant's attorney made her "unavailable," thus depriving him of his right to cross-examine her.

Appellant simply stretches the cases dealing with "unavailability" for hearsay purposes too far. These cases do nothing more than establish the circumstances in which the hearsay exception applies; they do not purport to hold that the Sixth Amendment is violated every time a witness for the Commonwealth testifies on cross-examination that he or she does not remember something. We decline appellant's invitation to extend them in such a fashion.

It is not at all unusual for a witness to testify that they do not recall or remember specific details or events.[13] To the extent that such memory lapses all favor one side, the witness is subject to having his credibility attacked. Here, appellant used the alleged memory lapses and the subsequent text messages from P.E. suggesting that she had stonewalled appellant's attorney at the preliminary hearing to attack P.E.'s credibility. That this credibility attack did not result in an acquittal does not mean that appellant was denied his right of cross-examination. Accordingly, the trial court did not err in allowing P.E.'s preliminary hearing testimony to be read at trial.

---

[13] The evidence in this case is that such a lack of memory may be more likely to occur with the victims of sexual assaults. Comparing memories of sexual assault to a deck of cards, Nurse Roach testified, without objection, that "it takes [victims] a while to retrieve all the cards. Sometimes they never retrieve them in their lifetime; sometimes they may retrieve a card years or months later. So they have a hard time . . . to tell a story in a complete start to finish." Roach also stated that post-traumatic stress can explain why a sexual assault victim may give inconsistent accounts of the same event to different people. This explanation is consistent with P.E.'s testimony at the preliminary hearing that she "just tried to block [] out" aspects of her relationship with appellant.

E.  Change in Charges after the Preliminary Hearing

Appellant also challenges the admission of P.E.'s preliminary hearing testimony at his trial on the grounds that, at the time of the preliminary hearing, he had yet to be charged with abduction with the intent to defile.  According to appellant, the addition of the charge after the preliminary hearing denied him the ability to "cross-examine about a specific existing charge," and, as such, denied him a meaningful cross-examination.

Our resolution of this issue is controlled by the decision of the Supreme Court of Virginia in Fisher v. Commonwealth, 217 Va. 808, 232 S.E.2d 798 (1977).  In Fisher, the Supreme Court had to

> consider whether testimony given by a witness during a preliminary hearing on a murder charge may properly be received as substantive evidence for the prosecution in the subsequent trial for both the murder and a robbery arising out of the same occurrence when the witness is deceased at the time of trial.

Id. at 809, 232 S.E.2d at 799.  Despite the fact that the defendant had yet to be charged with the robbery at the time of the preliminary hearing, the Supreme Court affirmed his convictions for both murder and robbery, holding that

> [t]he robbery and murder indictments grew out of one transaction, the events of which took place "in a matter of split second."  The evidence of the murder necessarily included the facts surrounding the robbery.  And defendant's cross-examination [at the preliminary hearing] unavoidably dealt not only with the two issues common to both charges . . . but also with the details of the robbery.  Under these circumstances, such evidence was properly received by the trial court in support of the robbery indictment.

Id. at 814, 232 S.E.2d at 802.

At the time of the preliminary hearing, appellant was charged with two counts of rape and with one count of abduction.  Subsequently, the abduction with the intent to defile charge was added.  The additional charge did not change the basic nature of the allegations, rather, it only added an additional element, the intent to defile, which the Commonwealth was required to

prove. Just as in Fisher, P.E.'s testimony at the preliminary hearing addressed the elements of the subsequently added charge. She testified in detail about the rapes, appellant's refusal to let her leave her apartment, his physically forcing her to the bed, his forcing her to accompany him to his residence, and his subsequent binding her with packing tape. Appellant's counsel engaged in significant cross-examination of P.E. related to each of these issues. In sum, although the charge was added after the preliminary hearing, the factual basis of the new charge was fully developed at the preliminary hearing and appellant could and did conduct a thorough cross-examination of P.E. related to those facts.[14]

Recognizing that application of Fisher to these facts is potentially fatal to his argument, appellant advances the alternative argument that "there is doubt that Fisher is still good law . . . ," suggesting that the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), implicitly overruled the result in Fisher. We disagree.

Unlike Fisher or the instant case, the issue in Crawford was not the admission of preliminary hearing testimony where the witness had been subject to extensive cross-examination. Rather, the challenged statement in Crawford was an out-of-court, unsworn police interview with the defendant's wife that occurred outside the presence of defendant's counsel. 541 U.S. at 39-40. When, because of the marital privilege, defendant's wife refused to testify at trial, the state sought (and was allowed) to admit her police interview as evidence. Id. at 40-41. The United States Supreme Court reversed the defendant's conviction, holding that the statement was admitted in violation of the Sixth Amendment because "[w]here testimonial

---

[14] We note that P.E.'s testimony regarding the events in her apartment related to appellant preventing her from leaving the apartment and dragging her to the bed, about which she was cross-examined, fully make out the elements of abduction. See Epps v. Commonwealth, 66 Va. App. 393, 404, 785 S.E.2d 792, 797 (2016) (finding that blocking the kitchen door and detaining the victim was a separate abduction unnecessary to accomplishing the crime of assault and battery). Coupled with the testimony about the subsequent rapes, the elements of abduction with the intent to defile were all addressed in P.E.'s preliminary hearing testimony.

- 22 -

evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68. Because the preliminary hearing testimony that was admitted in Fisher was subject to cross-examination and was admitted only after a finding of unavailability, we conclude that Crawford did not overrule Fisher as it pertains to the issue before us.[15]

Our conclusion is buttressed by our decision in Schneider v. Commonwealth, 47 Va. App. 609, 625 S.E.2d 688 (2006). In addressing an argument that Crawford had altered Virginia's longstanding requirements for the admission of preliminary hearing testimony, we held "our law regarding the admissibility of preliminary hearing testimony has always required unavailability and an opportunity for cross-examination and complies with the new requirements of Crawford without alteration." Id. at 613, 625 S.E.2d at 690. Accordingly, the trial court did not err in allowing P.E.'s preliminary hearing testimony to be read at trial.

II. Proposed Defendant's Exhibit 14[16]

Appellant argues that the trial court erred in declining to admit into evidence proposed Defendant's Exhibit 14, a text message P.E. sent to a friend the morning of the preliminary hearing. In the text message, P.E. wrote, "Is it sick that I'm making myself look really good right now just to piss him off?" Appellant argues that the text message should have been

---

[15] Even if the pertinent part of Fisher has been called into question by Crawford, we hold that appellant's Sixth Amendment right to confrontation was satisfied in this case. Crawford makes clear that the Sixth Amendment requires that the accused be allowed to confront his accuser. Implicitly, this requires that there be an accusation of which the accused is aware. Here, the accusations were established by P.E.'s testimony with which appellant was confronted and which he was able to subject to cross-examination. Because the abduction with intent to defile charge was fully made out by P.E.'s accusations at the preliminary hearing appellant could and did confront his accuser regarding her accusations, satisfying the Sixth Amendment guarantee as recognized in Crawford.

[16] Appellant's challenge to the exclusion of proposed Defendant's Exhibit 14 deals solely with an evidentiary ruling and, unlike his challenges to the admission of the preliminary hearing testimony, does not raise a constitutional issue.

admitted because it "demonstrate[s] that [she] was attempting to anger or provoke [him] during the preliminary hearing, that she was not afraid of him, and that her testimony was colored by bias, prejudice, and hatred toward [him]." Appellant also contends that the message was admissible because "[a] reasonable juror . . . may have concluded that [her] efforts to appear more sexually attractive to [appellant] at the preliminary hearing in this case made it less likely that [he] had actually raped" her.

"Generally, the admissibility of evidence is within the discretion of the trial court and [the appellate court] will not reject the decision of the trial court unless [the appellate court] find[s] an abuse of discretion." Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010). A "trial judge's ruling will not be reversed simply because an appellate court disagrees." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (internal quotation marks and citation omitted), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). Instead, a reviewing court can only conclude that an abuse of discretion has occurred in cases where "reasonable jurists could not differ" about the correct result. Id.

Under this deferential standard, we cannot say that the trial court erred in refusing to admit the text message. P.E.'s text message on the morning of the preliminary hearing is, at best, tangential to the issues of whether or not appellant raped and abducted her in September 2013. Furthermore, given all the text messages, inconsistencies, and P.E.'s preliminary hearing testimony, it was clear to the jury that there was a degree of animus between P.E. and appellant

- 24 -

at the time she testified. In short, we simply cannot say that the trial court abused its discretion in refusing to admit proposed Defendant's Exhibit 14.[17]

CONCLUSION

For the foregoing reasons, appellant's convictions for rape and abduction with the intent to defile are affirmed.

Affirmed.

---

[17] Even if it were error not to admit proposed Defendant's Exhibit 14, we conclude that any such potential error was harmless. In cases of non-constitutional harmless error, if we are "sure that the error did not influence the jury, or had but slight effect, the verdict and judgment should stand." Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (citations omitted). Here, given all of the evidence, including both the challenges to P.E.'s credibility and the substantive evidence of appellant's commission of the crimes (especially his confession to Taylor that he "kind of made [P.E.] have sex with [him]" and subsequent acknowledgement that he committed a sexual assault on P.E.) leads inexorably to the conclusion that the admission of proposed Defendant's Exhibit 14 would not have altered the outcome.