COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Huff and AtLee
Argued at Norfolk, Virginia

PUBLISHED

CASSANDRA MARCELLE MURRAY

                                                        OPINION BY
v.        Record No. 1226-18-1              JUDGE ROBERT J. HUMPHREYS
                                                        JANUARY 14, 2020
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

Miranda R. Mayhill, Assistant Public Defender, for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


On February 5, 2018, a grand jury for the Circuit Court of the City of Hampton ("circuit

court") indicted appellant Cassandra Marcelle Murray ("Murray") for possession of a firearm by

a convicted violent felon, in violation of Code § 18.2-308.2.  Murray pleaded not guilty.  After a

jury trial on May 29, 2018, Murray was found guilty and sentenced to five years' incarceration.

On appeal, Murray assigns the following four errors:

   I.  The trial court erred by allowing [Detective] Snelgrow to testify to
       impermissible opinion testimony without first declaring him an expert.

   II.  The trial court erred by refusing to allow Appellant to question [Detective]
        Snelgrow about relevant evidence.

   III.  The trial court erred by refusing to allow Appellant to admit the remainder
         of her statement to police.

   IV.  The trial court erred by denying Appellant's Motion to Strike and finding
        that the evidence was sufficient to find her guilty because the evidence did
        not establish that Appellant ever possessed the firearm knowingly and
        intentionally.

## I. BACKGROUND

On November 9, 2017, Detective Michael Snelgrow ("Detective Snelgrow") of the Hampton Police Department was working overtime on patrol while in uniform when a vehicle with different colored taillights passed him. It was later determined that Murray was driving this vehicle. Detective Snelgrow "went to turn around on the vehicle," but the vehicle quickly sped off. Detective Snelgrow continued to follow the vehicle and observed it fail to stop at multiple stop signs. As the vehicle approached a third stop sign, its lights went off and it failed to stop at that stop sign, as well. Detective Snelgrow activated his emergency lights, and the vehicle pulled over. After the vehicle stopped, Murray left the vehicle, dropping a cell phone and a magazine containing .45 caliber cartridges. Murray then fled from the scene on foot. Detective Snelgrow searched the vehicle and found a black bookbag containing a .45 caliber firearm underneath the front passenger seat. There was no one else in the vehicle. Murray was apprehended while hiding behind a home a short time later.

At trial on May 29, 2018, Detective Snelgrow testified that he had training and experience in the carrying, use, and identification of firearms, including during his youth when he went hunting with his father. Detective Snelgrow identified the firearm that he discovered the day of the incident, and the weapon was admitted into evidence. On direct examination, the Commonwealth asked Detective Snelgrow whether the gun was "designed to propel a missile by an action of explosion by any combustible material." Defense counsel objected, stating that Detective Snelgrow had to be properly qualified as an expert before forming an opinion on the matter. The circuit court did not immediately rule on the objection. The Commonwealth then asked Detective Snelgrow, "As a member of the Hampton Police Department, have you had training and education in the use and identification of firearms?" Detective Snelgrow responded,

> Yes, we do. I went through the police academy in 1996 where I was trained and qualified on the firearm I was issued, and since

that time I've been through—the firearm I carry now is the third firearm I was issued since I've been with the Hampton Police Division. I go through yearly training with the police department, do qualifications, and also do firearms shooting on my own, outside the division.

Detective Snelgrow then testified that the gun he found was "designed to propel a missile by an action of explosion by any combustible." Defense counsel requested a ruling on his prior objection that Detective Snelgrow had not been qualified as an expert. The circuit court asked the Commonwealth whether the Commonwealth was offering Detective Snelgrow as an expert. The Commonwealth responded that it was not required to offer Detective Snelgrow as an expert because based on his answer explaining his training and experience, he "should have known a gun since he looked at that gun." Defense counsel responded that because the Commonwealth was asking for Detective Snelgrow's opinion, he had to be qualified as an expert before he could answer the question. The circuit court overruled defense counsel's objection.

On cross-examination, Detective Snelgrow testified that the gun was a .45 caliber weapon and the magazine held .45 caliber ammunition. Defense counsel then asked whether Detective Snelgrow could testify to "anything else about the design of the gun or the actual model." The Commonwealth objected based on relevance. Defense counsel responded that the clip could have been from a different gun and that counsel was trying to ascertain how common a gun it was. The circuit court sustained the Commonwealth's objection.

Next, Detective Steve Carpenter ("Detective Carpenter"), with the Hampton Police Department, testified that he spoke with Murray on the night of the incident after she was transported to Investigations. Detective Carpenter testified that Murray indicated she knew there was a gun in the black backpack. On cross-examination, defense counsel asked Detective Carpenter what else Murray told him about the gun. The Commonwealth objected on hearsay grounds. Originally, the circuit court overruled the objection. However, after additional

- 3 -

argument, the circuit court changed its ruling, stating that Murray's statements did not fall under an exception to the general rule prohibiting hearsay. The circuit court clarified that defense counsel could not ask Detective Carpenter about Murray's statements during his interrogation of her. The Commonwealth also objected, based on hearsay, to having the video of the interview with Detective Carpenter played. The circuit court ruled that defense counsel could not play the video during the Commonwealth's case-in-chief. After the Commonwealth rested, defense counsel moved to strike the evidence as insufficient. The circuit court denied the motion.

Thereafter, Murray testified in her own defense. She stated that she gave two friends a ride to Newport News using her girlfriend's car. Murray testified that after dropping the friends off, she was driving home when she found a bag containing a gun on the floor of the passenger side. Once she found the gun, Murray alleged that she called her friend and told him that he left the bag in the vehicle. She testified that she told him about the gun and offered to turn the vehicle around in order to return it, but the friend told Murray to drop the gun at a mutual friend's house "because we'd rather be safe than sorry," since the mutual friend's house was closer. Murray testified that she was going to return the gun because she knew that she was not supposed to be around guns. Murray also testified that she ran from the officer after being pulled over because she was scared. On cross-examination, Murray admitted that she could have pulled the vehicle over and told the owner to come retrieve the gun. She also admitted to intentionally continuing to drive the vehicle with the gun in the bag in order to take it to the rightful owner. After the defense rested, defense counsel renewed his motion to strike. The circuit court denied the motion. The jury found Murray guilty of unlawful possession of a firearm by a convicted felon. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"This Court reviews a [circuit] court's ruling admitting or excluding evidence for abuse of discretion." Payne v. Commonwealth, 292 Va. 855, 866 (2016) (citing Lawlor v. Commonwealth, 285 Va. 187, 229 (2013)). This Court does not substitute its judgment for that of the circuit court, but "consider[s] only whether the record fairly supports the [circuit] court's action." Carter v. Commonwealth, 293 Va. 537, 543 (2017) (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)). "However, '[a circuit] court by definition abuses its discretion when it makes an error of law . . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" Porter v. Commonwealth, 276 Va. 203, 260 (2008) (alterations in original) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

### B. Opinion Testimony of Detective Snelgrow

Murray first argues that since Detective Snelgrow was never qualified as an expert witness, his opinion about the design and operability of the firearm was inadmissible under the Virginia Rules of Evidence. We disagree. Rule 2:701 of the Virginia Rules of Evidence states,

> Opinion testimony by a lay witness is admissible if it is *reasonably based upon the personal experience or observations of the witness* and will aid the trier of fact in understanding the witness' perceptions. *Lay opinion may relate to any matter*, such as—but not limited to—sanity, capacity, physical condition or disability, speed of a vehicle, the value of property, identity, causation, time, the meaning of words, similarity of objects, handwriting, visibility or the general physical situation at a particular location. However, lay witness testimony that amounts only to an opinion of law is inadmissible.

(Emphasis added). Our Supreme Court has clarified that Rule 2:701 does not allow lay opinion testimony that is "not based on the perception of the witness or on the witness's personal knowledge." Martin v. Lahti, 295 Va. 77, 85 (2018).

In contrast to lay opinion testimony, "[e]xpert testimony is appropriate to assist triers of fact in those areas where a person of normal intelligence and experience cannot make a competent decision." Utz v. Commonwealth, 28 Va. App. 411, 423 (1998) (quoting Swiney v. Overby, 237 Va. 231, 233 (1989)). Before allowing expert testimony, the circuit court must determine whether the expert testimony is relevant, "whether the subject matter of the testimony is beyond a lay person's common knowledge," and whether the testimony would be helpful to the fact-finder. Id.

In this case, Detective Snelgrow was not required to be qualified as an expert in order to testify about the nature of the weapon he discovered because his opinion was a valid lay opinion under Rule 2:701. By testifying that the weapon was "designed to propel a missile by an action of explosion by any combustible," Detective Snelgrow was merely testifying that in his experienced opinion, the item he found was a firearm. See Jordan v. Commonwealth, 286 Va. 153, 157 (2013) (defining a "firearm" for purposes of Code § 18.2-308.2 as "any instrument designed, made, and intended to fire or expel a projectile by means of an explosion" (quoting Armstrong v. Commonwealth, 263 Va. 573, 583 (2002))). Given a general constitutional right to keep and bear them, firearms are generally not so exotic that it requires extensive or specialized expertise for a great many lay persons with familiarity with them to correctly identify a firearm as such. Because Detective Snelgrow's opinion was reasonably based upon his training, personal experience, and observations, the circuit court did not err in admitting his testimony as a lay opinion pursuant to Rule 2:701.

## C. Questioning Detective Snelgrow

Murray argues that she should have been allowed to question Detective Snelgrow about (1) the design of the magazine and its relation to the gun; and (2) whether any investigation regarding the gun owner was conducted, and the results of such an investigation.

Even assuming these points were properly preserved for appeal, this Court cannot reach the merits of this assignment of error because Murray failed to proffer the testimony she sought to elicit from Detective Snelgrow. "Error may not be predicated upon admission or exclusion of evidence, unless . . . the substance of the evidence was made known to the court by proffer." Va. R. Evid. 2:103; see also Massey v. Commonwealth, 67 Va. App. 108, 132 (2016) (alteration in original) ("The failure to proffer the expected testimony is fatal to [the] claim on appeal." (quoting Molina v. Commonwealth, 47 Va. App. 338, 367-68 (2006))). A proper proffer must allow this Court to determine (1) the admissibility of the excluded testimony and (2) whether the exclusion of the evidence was prejudicial to the proffering party. See Massey, 67 Va. App. at 132.

In this case, Murray failed to proffer the answers to both questions about which she now complains. Without the expected testimony from Detective Snelgrow, this Court cannot determine whether the circuit court erred by finding the testimony irrelevant. For these reasons, the assignment of error is not subject to appellate review.

### D. Admission of the Remainder of Murray's Statement

Murray argues both that she should have been allowed to play the video of her interview with Detective Carpenter and that she should have been allowed to question Detective Carpenter about her full statement. However, Murray did not proffer the video she sought to introduce. Thus, this Court likewise cannot reach the merits of that argument. See Va. R. Evid. 2:103. Further, the Commonwealth argues that the assignment of error is procedurally defaulted in its entirety by lack of specificity in the objections made in the court below. Rule 5A:18 of the Rules of the Supreme Court of Virginia provides that the circuit court's judgment cannot be reversed "unless an objection was stated *with reasonable certainty* at the time of the ruling." (Emphasis added). On appeal, Murray argues that the remainder of her statement should have been

- 7 -

admitted under Rule 2:106(a) of the Virginia Rules of Evidence. However, at trial, Murray's only stated basis for admitting her statements was simply that "the jury deserves to hear all [of] these things." Assuming, without deciding, that this rather nebulous statement was sufficient to preserve an issue regarding the rule of completeness for appeal, her argument nevertheless fails.

Murray's proffer of the remainder of her statement was inadequate to determine whether the doctrine of completeness, memorialized as Rule 2:106(a) of the Virginia Rules of Evidence, applies. That evidentiary rule provides that when a portion of a "writing or recorded statement" is introduced by one party, upon motion of the other party, "any other part of the writing or recorded statement which ought in fairness to be considered" may be admitted, "*unless such additional portions are inadmissible under the Rules of Evidence*." Va. R. Evid. 2:106(a) (emphasis added). ("[The] general rule [of completeness] does not, however, deal with cases in which part of the statement contains irrelevant and immaterial evidence, which is not admissible." Pierce v. Commonwealth, 2 Va. App. 383, 389 (1986).)

Here, Murray's only proffer as to the remainder of her statement to Detective Carpenter was that Murray "explained to the officer [that] she didn't do it on purpose. She found the gun in her car, followed up on where the gun came from, and was trying to get rid of it as soon as possible." To be adequate, a proffer must allow this Court to determine the "admissibility of the proposed testimony." Massey, 67 Va. App. at 132 (quoting Molina, 47 Va. App. at 368). Defense counsel's proffer was exceedingly vague, such that this Court cannot determine whether the testimony sought to be elicited was relevant testimony. If by "trying to get rid of" the gun, the testimony sought to be elicited was that Murray was returning the gun to its original owner, the testimony would be an irrelevant explanation of her motive for illegally exercising dominion and control over the firearm. Alternatively, if she meant that she was taking some other action unrelated to transporting or otherwise controlling the firearm once she discovered it, then the

- 8 -

testimony may or may not have been relevant and neither the circuit court nor we have any way of knowing. Thus, we cannot determine whether the testimony was admissible as relevant or whether Rule 2:106(a) applies.

### E. Sufficiency of the Evidence

In reviewing the sufficiency of the evidence, "we review the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved." Smith v. Commonwealth, 282 Va. 449, 453 (2011). The circuit court's judgment will not be reversed unless it is "plainly wrong or without evidence to support it." Code § 8.01-680; see also Bolden v. Commonwealth, 275 Va. 144, 148 (2008).

Murray was convicted under Code § 18.2-308.2, which states in relevant part, "It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm . . . ." Murray argues that the evidence was insufficient to show that she possessed the firearm knowingly and intentionally, as required by statute.

This argument is without merit. The firearm was found in a backpack in the vehicle she was driving, without any passengers. Murray fled from the scene, evidencing consciousness of her guilt. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). As she fled the vehicle, Murray also dropped a magazine loaded with ammunition compatible with the firearm found in the vehicle she was driving. Detective Carpenter testified that Murray told him she knew the firearm was in the vehicle. By Murray's own testimony, she was intentionally transporting the firearm back to its owner. Therefore, there is ample evidence in the record of knowing and intentional possession.

## III.  CONCLUSION

Because we find no error in the evidentiary rulings made by the circuit court and because the evidence was sufficient as a matter of law, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>